Goff *v.* O'Conner.

---

POTTER D. H. GOFF, Appellant, *v.* MICHAEL O'CONNER, Appellee.

APPEAL FROM KANE.

Moore owned a house and lot; he sold the house to O'Conner, and the land to Goff; they were both sold on a judgment rendered against Moore, prior to the sale to Goff and O'Conner, and Goff became the purchaser at sheriff's sale : *Held,* that although Goff had notice of the sale of the house to O'Conner, at the time of the first sale, he would hold the house and land under the sheriff's deed.

Buildings are *prima facie* part of the land, and if a party claims them as personalty, he must show them to be such.

O'CONNER sued Goff in trover before a justice of the peace, and recovered a judgment for fifty dollars. Goff appealed to the Circuit Court. On the trial in the Circuit Court, it appeared that one Moore, who owned a lot of ground in the town of Dundee, on which a house was erected, sold the house to O'Conner, and the land to Goff; the house was reserved from the sale to Goff, by parol agreement; subsequently the house and lot were both sold on execution, by virtue of a judgment existing prior to the sale to Goff and O'Conner; Goff became the purchaser under this sale by the sheriff. Goff, after his purchase under the sheriff's sale, refused to permit O'Conner to remove the building. O'Conner then brought trover, to recover the building.

There was a trial before J. G. Wilson, judge, and a jury, at the January special term, 1855, of the Kane Circuit Court. Verdict and judgment for O'Conner, for the sum of fifty dollars. Goff appealed from this judgment.

E. S. LELAND, for Appellant.

HERRINGTON and GIFFORD, for Appellee.

SCATES, C. J. We have a precedent so similar in facts, and so just and appropriate in the principles laid down, in the case of *Hoaton* v. *Findlay*, 12 Penn. R. 304, that we have no hesitation in approving and following it.

Had the plaintiff rested his case, or been compelled to rest it upon the question of title derived from the purchase from Moore, the equity, not to say the law of the case, would have been clearly in favor of defendant. For Goff would have taken, and did take, under that purchase, the rights and interests as they were in Moore. Moore had consented to sever the house from the freehold, by a sale of it, and had received payment of the consideration-money, while the land and house belonged to him. He afterwards sold the land to Goff, with the full knowledge of the previous sale of the house to O'Conner, consequently it would be unconscionable in Goff to set up title to the house under his purchase from Moore. But this is not the source of his title in this case. William L. Knowles had recovered a judgment against Moore, which had become a lien upon the land, including the house as a part of the land. Execution had been issued, levied, and the land sold in satisfaction of that debt, to P. R. Wright. Goff found his own title by purchase from Moore, over-reached and destroyed by the judgment title, as well as O'Conner's purchase. As between him and O'Conner, he may well have acknowledged and respected O'Conner's title. But he, as well as O'Conner, is liable to lose all interest, by the

paramount judgment title. O'Conner might have bought that paramount title, and taken the whole, without regard to his claim under the purchase from Moore. To secure himself, he has bought in that title, and now claims under that title. There can be no serious question raised in reference to this title, such as might have existed between the other two, derived by different purchases of Moore, of separate parts of the premises. If Knowles had a right to sell the land in satisfaction of his debt, without regard to Moore's sales of the property, as he unquestionably had, then a purchaser at that sale, is equally, and to the same extent protected against Moore's acts, and his title will relate back to the attaching of the judgment iien. To hold otherwise, would be to put it in the judgment debtor's power to alienate and destroy the means of payment, by selling out the land by piece meal. The protection afforded the creditor's rights must equally extend to the purchaser under his judgment. O'Conner cannot ask Goff to redeem the whole for his benefit in the part he purchased, nor demand of Goff, a release of that part, under Goff's purchase of the paramount title.

I can but think from the evidence and instructions asked on both sides, that the true question at issue, in this case, was overlooked or lost sight of, and an immaterial one submitted and tried. The proofs and instructions seem to regard the question as depending upon the fact and the law, whether the house was a fixture to the land. I do not perceive that that question arose or was involved in the case. Houses, in common intendment of the law, are not fixtures to, but part of, the land. But in favor of trade, manufactures and such like motives of public policy, as between landlord and tenant, executor or administrator and heir, etc., questions may arise, whether houses, etc., erected for particular purposes, not connected with the ordinary uses of the land, have become part of the freehold or not. This does not depend, in the case of houses, so much upon the particular mode of attaching, or fixing and connecting them with the land upon which they stand or rest, as it does upon the uses and purposes for which they were erected and designed. Materials of which houses are built, are, it is true, personal property, but by their construction into a house, they become *prima facie*, at best, a part of the land, by intendment of law. So of fence material, when erected into a fence, and some other similar things. But it is not so with all articles of inanimate personalty. It will depend upon the question of fixture or not; and that will depend upon the mode and nature of the attachment, and whether made and designed for permanent use, and addition, and so that it cannot be separated without injury to the freehold, or whether for trade, etc., temporarily. See *Cook*

v. *Whiting, post.* But these questions do not arise in this case. While the lot and house were both Moore's, they were unquestionably real estate, and all would have passed by a deed of the lot. While they were thus in Moore, the lien of Knowles' judgment, attached, and it was not in Moore's power to alienate the whole or a part in fraud of that judgment. Moore might convey, subject to that judgment, or if free from all liens, a part to one and a part to another, dividing as he please; or he might sever a part from the realty, and convert it into personalty, and convey the remainder of the realty. And so he might sever a fixture. But the rule in relation to fixtures, etc., obtains in its greatest strictness, in favor of vendees, as between them, and vendors, or those claiming under them, if the property be left in a position of doubt, under the terms of the deed. The mode of attaching or fixing this house to the soil, by placing it upon a loose stone, and a few score chips laid upon the surface, has but little weight in my view, in determining whose it should be. I give more weight to the designs, intentions and uses of the house, and the particular agreement under which it was located on that lot. All difficulty on this branch of the question, was removed by Moore's purchase of both, and his use of the house, for a dwelling on the lot. But he again attempts to sever it by sale. Will a simple bargain and sale, and payment of the purchase money, amount to such a severance without other act, as to prevent that portion of the land, passing by the general terms of a deed? I should think not. Under the view we take of the question in the record, we do not deem it necessary to discuss this branch of the inquiry below, any further.

We are of opinion that the instructions given on behalf of the plaintiff below, and those refused for, and the modifications of those given in behalf of, defendant below, were all erroneous as applicable to the plaintiff's title, derived from the judgment and sale on execution.

Judgment reversed and cause remanded for further trial.

*Judgment reversed.*