THE OTTUMWA WOOLEN MILL CO. v. HAWLEY ET AL.

1. **Conveyance: APPURTENANCES.** Appurtenances are things belonging to another as principal and which pass as incident thereto. The term as used in conveyances passes nothing but the realty and such things as belong to it.

2. **Fixtures: WHAT ARE: MACHINERY.** In determining whether an article is a fixture or personal property, the controlling consideration is the intention of the party making the annexation, and the fact of physical attachment is of importance only in disclosing such intention.

3. ———: **RULE APPLIED.** The machinery of a woolen mill consisting of looms, carders, breakers, condensers, etc., was *held* to be fixtures and included in a trust deed covering the realty.

*Appeal from Wapello Circuit Court.*

WEDNESDAY, SEPTEMBER 20.

In 1870, one Grim was the owner of part of an out lot in the city of Ottumwa, upon which was situated a woolen manufactory propelled by a steam engine, and which manufactory contained all the usual machinery and appliances for manufacturing cloth from wool. On the 1st day of October, 1870, said Grim executed a trust deed on said real estate to secure a loan of $4,000 from the Lamar Insurance Company. The said trust deed, after the description of the land by metes and bounds in the granting clause thereof, grants "all and singular the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining." This deed of trust was subsequently assigned to James Hawley, Sr., appellant's testator.

On the 10th day of May, 1871, said Grim and wife executed to Wm. M. King a deed to an undivided one-third of said land "with the woolen mill, machinery, and fixtures thereto attached." On the 14th day of May, 1871, said Grim and wife and King and wife executed to the Ottumwa Woolen Mill Company, plaintiff and appellee herein, a deed for said land "with the buildings thereon, and the fixed and movable machinery therein."

On the 25th day of March, 1872, James Hawley, Sr., fore-closed the trust deed, and on the 3d day of Agust, 1872, the property was sold on a special execution to said James Haw-ley, Sr., subject to redemption. During the year of redemp-tion said Hawley died, and these appellants were appointed executors of his estate, and on the 5th day of August, 1873, the sheriff executed a deed of the land to appellants as exec-utors of said James Hawley, Sr.

The description of the property in the decree of foreclosure, and in the sheriff's deed, is subtantially the same as in the trust deed.

Appellants took possession of the building and machinery from plaintiff, and at the time thereof were informed by the superintendent of plaintiff that he had been instructed not to surrender the machinery. Upon refusal to deliver up the machinery to the appellee this suit was brought to recover its possession or value, claiming that said machinery was per-sonal property, and did not pass by the trust deed, foreclosure, and sheriff's deed.

The issue made by the parties was as to the character of said machinery, whether fixtures or personal property. There was trial to the court and a finding made that the steam engine, shafting and some other machinery were fixtures and passed with the land and building, and that certain other parts of the machinery and appliances in the building and of the value of $4,112, were personal property and not fixtures, and a judgment was rendered against the defendants for said value, and they appeal.

*H. B. Hendershott* and *Wm. McNett*, for appellants.

*Stiles & Burton*, for appellees.

ROTHROCK, J.—I. At the time of the trial in the court below an examination of the premises and machinery in ques-

1. CONVEY-ANCE: appur-tenances.
tion was made by the court, and the parties, and an agreement was made as to the situation and manner of attachment of the various parts of the machinery, after which no evidence was taken as to the character of the

attachment of the machinery in question. This agreement is quite lengthy, and it is not necessary to incorporate it in this opinion in order to properly comprehend the conclusion to which we have arrived.

The court found that the following property was affixed to and passed with the real estate:

1. The steam engine, boiler, whistle, pump, and all its attachments and belts, connecting it directly with the other machinery.

2. The fulling mill and its attachments and belts.

3. The main shaft and the pulleys thereon, and all the belts connecting it with the counter shafting.

4. The counter shafting and the dye kettle.

5. The counter and shelving in the office.

It was found that all of the other machinery and articles in controversy were personal property and did not pass by the mortgage and sheriff's deed.

No question is made here as to the finding of the court that the steam engine and other articles above enumerated were fixtures, and passed by the mortgage and sheriff's deed. It is proper to observe that the boiler was walled about with one layer of brick, and that some of the other articles enumerated above were so constructed and attached to the building and land as to be peculiarly adapted to that building, rather than to be used in woolen manufactories generally, unless by material changes in construction and adaptation.

The machinery which the court held to be personal property consisted of wool carders, condensers, breakers, spinning jacks, looms, shears, etc. Such of this machinery as was operated by steam power was so operated by means of belting connected with the main shaft or counter shafting.

The looms are fastened to the floor by screws in the feet, some looms having two screws and some four. The carders are kept in position by their own weight, one weighing about 3,000, and the other about 1,800 pounds. The spinning jacks are fastened and held in position by cleats nailed to the floor, and by iron rods running up through the floor above. Other

of the machinery being ponderous is designed to be kept in position by its own weight.

Counsel for appellant claim that as the mortgage or trust deed conveyed the premises "with the appurtenances," something more is conveyed than the real estate. This being the usual form of conveyance of real estate, we are unable to see how personal property can be embraced therein. Appurtenances are things belonging to another thing as principal, and which pass as incident to the principal thing. The term as used in conveyances passes nothing but the land and such things as belong thereto, and are part of the realty.

II. The main question in the case and to which counsel for both parties have principally directed their arguments, is as to the character of the machinery in question, whether it be real or personal property.

2. FIXTURES what are : machinery.

Fixtures are a species of property which are the dividing line between real and personal property, and to decide on which side of the line certain property belongs is often a vexatious question. When we compare a thing at the extremity of one class with a thing at the extremity of another the difference is obvious, but when we approach the point of division difficulty arises in discovering where the distinction should be drawn. Hill on Fixtures, 16. On the question whether such machines so situated are fixtures, so that they constitute a part of the real estate, the authorities are so far from being uniform that no rule of universal application can be deduced from them, without conflicting with the doctrines found in some of the decisions upon the subject.

In New York, Ohio, Vermont, and some other States it is held that property of the character in question is personal, and does not pass by a mortgage or conveyance of the real estate. *Murdock v. Gifford*, 18 N. Y., 28; *Walker v. Sherman*, 5 Illinois, 527; *Potter v. Cromwell*, 40 N. Y., 287; *Teaff v. Hewitt*, 1 Ohio State, 511; *Corwin v. Cowan*, Id., 629; *Hill v. Wentworth*, 28 Vermont, 428; *Bartlett v. Wood*, 32 Id., 372; *Gale v. Ward*, 14 Mass., 352.

In Maine, Pennsylvania, New Hampshire and in other States, the courts hold that property of the character in ques-

tion is not personal, and passes by mortgage or deed of the real estate. *Farrar v. Stackpole*, 6 Greenleaf, M., 155; *Corliss v. McLogin*, 29 Me., 115; *Parsons v. Copeland*, 38 Id., 537; *Burnside v. Fritchell*, 43 N. H., 390; *Voorhis v. Freeman*, 2 Watts & Serg., 116; *Harlan v. Harlan*, 15 Pa. St., 513.

In all of these cases, and in all the others cited in argument wherever the question arises as to the character of a steam engine or water wheel, which is the propelling power of a mill or manufactory, the uniform rule is that they are held to be fixtures, and pass with the real estate. The same may be said of the stones or burrs in a grist mill, the cog wheels, gearing and shafting in a mill or manufactory, they being parts of the motive power. The court below properly held the engine, boiler, shafting, and counter shafting and belting to be fixtures, and that they passed under the mortgage foreclosure, and sheriff's sale. With the belting or straps which propelled the looms, spinning jacks, etc., the court stopped and in substance decided that here is the dividing line; all beyond are mere chattels. The basis or reason for thus holding seems to be in the thought that there is nothing in the character of the property, or in the manner of its annexation to the building, or in its adaptation thereto indicating that it was intended as a permanent accession to the realty, and that adaptation to the *business* carried on in the building is not a criterion for determining the question as to whether the machinery be real or personal property.

It is argued that these looms, spinning jacks, etc., are equally well adapted to any other building, that they are manufactured with a view of being used in any woolen mill in which they may be placed; that they are entire and complete machines in and of themselves; that the physical attachments are such that they may readily be removed to any other building, and that there is nothing in the character of the machines or mode of annexation to denote that they were intended as permanent accessions to the realty, and therefore, they are chattels.

In the case of *Teaff v. Hewitt*, 1 O. St., 511, it is said: "The true criterion of a fixture is the united application of the following requisites:

"1. Actual annexation to the realty, or something appurtenant thereto.

"2. Application to the use or purpose to which that part of the realty with which it is connected is appropriated.

"3. The intention of the party making the annexation to make a permanent accession to the free-hold:"

In the application of the rule just stated, it was held that "the machinery in a woolen factory, consisting of carding machines, spinning machines, power looms, etc., connected with the motive power of the engine by bands and straps, but in no wise attached to the building except by cleats or other means to confine them to their proper places for use, and subject to removal whenever convenience or business may require, without injury, are not fixtures, but chattel property." It was held in that case that the engine and boiler were fixtures.

In *Parsons v. Copeland*, 38 Me., 537, it was held that the looms, carding machines, etc., belonging to a woolen factory and placed therein by the owners of the freehold, were fixtures and passed with the realty. It is said by the court that, "It cannot be denied that the physical attachment of certain articles to the freehold is a very *uncertain and unsatisfactory* criterion. We have seen that it is well settled that the same attachments will not change the character of the article, when made under one species of tenancy, when under another, with much less of a permanent connection, it will cause the article to become a part of the real estate. Mill stones, the gear of the mill, and the water-wheel to which the power is applied, and the articles connected, which are universally conceded to be fixtures, and to pass with the realty, may be taken from their appropriate places without the withdrawing of a spike, a pin, or a nail, or the displacement of a cleat, *their own weight often keeping them in their intended position*, and no injury whatever arise to the building from which they are taken." * * * * * *

"But it is true, undoubtedly, that the building, the water-wheel and the gear designed for a grist mill, have peculiarities, and are often very different from the water-wheel, the gear, as well as the building intended to constitute parts, of a woolen

factory. And the machinery in the former, consisting of the mill stones, the cleansing apparatus, the bolts, the belts with their appendages to carry the grain to the cleanser, and the meal to the bolts, all of which are believed sometimes, if not generally, to be moved by means of the belts connected with the gear of the mill, together with the hoppers, the hoops, troughs, etc., are as easily removed as are the cards, the looms and the pickers in the latter. If the building is designed for a woolen factory, the wheels and gearing to which the motive power is applied constructed in a manner suited to promote the *intended* object, after the machines are placed in the building, it is only another step in the prosecution of the *design*, and it is not easy to understand wherein the latter fail to have the properties of the former, or how one can have distinguishing characteristics from the other, so that one is to be treated as personal property while the other is real estate."

The three requisites laid down in the case of *Teaff v. Hewitt*, as constituting a fixture, it is said, must all combine. The first, being physical attachment, all the cases hold is a very uncertain and unsatisfactory criterion, and in our opinion the only value to be attached to it is, in determining the intention of the owner of the freehold in making the annexation. If it be so affixed that its removal would materially injure the building, this is evidence of an intention to make it a permanent annexation.

The second requisite, being application to the use or purpose to which that part of the realty with which it is connected is appropriated, is in this case fully met by the use of this machinery in a woolen mill, and without which the mill itself would be useless.

The third requisite, being the intention of the party making the annexation to make a permanent accession to the freehold, is to our minds the controlling consideration in determining the whole question.

The character of the physical attachment, whether slight or otherwise, and the use, are mainly important in determining the intention of the party making the annexation. And herein lies the reason of the rule that many articles of prop-

The Ottumwa Woolen Mill Co. v. Hawley.

erty are mere chattels as between landlord and tenant, which are fixtures as between heir and executor, or vendor and vendee. A mere tenant, for a brief period, is not held as intending to be making permanent annexations to the freehold.

In our view, the court, in the case of *Teaff v. Hewitt, supra*, after announcing the above requisites, in applying them to the case, holds physical attachment to be the principal criterion, leaving out of view the main consideration, viz.: the intention of the party making the annexation.

It being conceded by all the cases that the engine, boiler and attachments, being the motive power, are fixtures, and that the stones or burrs of a grist mill, with the attachments, are likewise fixtures, it is not easy to understand why any dividing line should be made at the point where the belting attaches to the other machinery. Is there anything in the whole record of this case tending to show that the machinery in question was intended to be any less permanent than the engine, shafting or belt? The fair presumption is, that the whole machinery, including that now in question, was placed in the building with the intention that they should remain there as part of the manufactory until worn out or displaced by others. This assumption is as strong and controlling as to the carding machines, spinning jacks, etc., as it is as to the engine, shafting and belts. Our conclusion is, that all of the machinery which was propelled by the engine was part of the real estate, and passed with the foreclosure and sheriff's deed.

It may be said that the boiler was encased in a brick wall, and by reason of being thus firmly attached, it was a fixture, and that the machines in question were capable of removal, and this denoted an intention not to change their character from chattels to fixtures.

The ready answer to this is, that all the authorities hold that the motive power of a mill or manufactory is part of the real estate, whether firmly attached or not. Steam engines are manufactured and sold as engines, without reference to any particular building or mill where they may be placed, and are as capable of being used in buildings indiscriminately as power looms, spinning jacks, or carding machines.

In conclusion, it may be proper to say that this cause was submitted at the June term, 1875. Since that time the *personnel* of the court has materially changed, and the conclusion now announced is the opinion of each member of the court as then and now constituted. The cause will be reversed, and remanded with directions to ascertain the value of such of the property in question as is not in any manner part of the machinery operated by the motive power, and as to such value plaintiff will be entitled to a judgment.

REVERSED.