J. M. Schiltz, Appellant, v. J. C. Ferguson et al., Appellees.

No. 40219.

June 23, 1930.

*Kelly, Shuttleworth & McManus,* for appellant.

*Howe & Howe,* for appellees.

Albert, J.—Plaintiff is the holder of a warranty deed to Lots 21, 22, 23, and 24 in Grassmere, an official plat now and formerly a part of the city of Des Moines, Iowa. This deed contains the usual warranty and covenants, in which the defendant J. C. Ferguson and wife are grantors, and the plaintiff herein is grantee. The question in dispute is whether or not this deed covers a certain frame building which stood upon the property at the time of this conveyance. The record fully shows that, at the time of this conveyance, Ferguson was not the owner of this building, and also further shows that, subsequent to the date and delivery of the conveyance, Ferguson became the owner thereof.

Section 10043, Code, 1927, reads as follows:

"Where a deed purports to convey a greater interest than the grantor was at the time possessed of, any after-acquired interest of such grantor, to the extent of that which the deed purports to convey, inures to the benefit of the grantee."

The warranty deed above referred to had no exceptions or reservations whatever, and therefore carried title to Schiltz, not only of the land itself, but of all the buildings thereon; and when Ferguson acquired title to the building, his subsequent acquiring of such title passed it on to Schiltz, under the above-quoted section of the Code, by reason of the fact that he did not have such title to convey at the time he made the deed, and thereby Schiltz became the owner, not only of the land, but of the building, as well. This must be decisive of the case, unless, by reason of certain other matters to which reference will be later made, the operation of the statute is avoided.

It is undisputed that, on November 29, 1927, Schiltz signed an offer in writing to buy the above-described property, which offer was promptly accepted by Ferguson. The property was described therein under the identical description above set out in the deed, and Ferguson was to furnish an abstract showing a good and merchantable title, free and clear of all taxes, assessments, liens, incumbrances, etc. It is admitted by all parties that there was a frame building on a concrete foundation on the above-described property at the time of the making of this contract. The evidence also shows that this building was placed on said lots by the defendant Jenkins, under a lease with one Donahey, grantor of Ferguson under date May 28, 1927. Under the terms and provisions of this lease, a written agreement was made, canceling the same as of the date of October 1, 1927, and permission was given by Donahey to Jenkins "to leave building and equipment stand on my [Donahey's] ground, at no rent to me, while you [Jenkins] are endeavoring to sell or trade the same, as a going business." Right was reserved to Donahey to cancel this agreement at any time by giving 30 days' written notice to remove the building and equipment from the premises. Neither this lease nor the cancellation thereof was made of record in Polk County, Iowa. This building was used for the sale of soft drinks, but was not being actually used for that pur-

pose at the time in controversy herein. The building was locked with a padlock, and the keys were in the possession of Jenkins, although at times in the possession of Ferguson.

This action was brought originally against Ferguson and Jenkins, to quiet title to the building. Jenkins and Ferguson filed separate answers, the substance of each being that the building was erected and owned by Jenkins; that Schiltz was advised and knew that Jenkins was the owner of this building before he entered into the written contract for the purchase of the property, on November 29, 1927. This gives rise to the crucial question in the case. Schiltz denies that he had any knowledge or information whatever of Jenkins's ownership or claim of ownership to this building before he signed the contract of purchase, but admits that, after he signed the contract, and before he received the deed, he was fully advised of Jenkins's claim. With this knowledge on the part of both the vendor and the vendee, the vendor, Ferguson, made a deed to Schiltz, containing full covenants of warranty.

At this point we are cited to the parol-evidence rule, and the following cases called to our attention: *Van Wagner v. Van Nostrand,* 19 Iowa 422; *Barlow v. McKinley,* 24 Iowa 69; *McGowen v. Myers,* 60 Iowa 256; *Flynn v. White Breast Coal & Min. Co.,* 72 Iowa 738; *Harrison v. Des Moines & Ft. D. R. Co.,* 91 Iowa 114; *Newburn v. Lucas,* 126 Iowa 85; *Stuhr v. Butterfield,* 151 Iowa 736; and *Horn v. Phillips,* 167 Iowa 169. It is to be noted, in passing, that each and all of these cases are law actions, for breach of covenants of warranty; but, as we view the matter, this question is not really involved in the case we have before us, and we make no pronouncement on the parol-evidence rule in relation hereto.

It is the claim of the defendant that there was a severance by mutual agreement between Donahey and Jenkins, the owner of the building, which was known to Ferguson and acquiesced in by him, and that Schiltz was notified of this severance before he purchased the property.

The law seems quite well settled on the doctrine of severance urged by the defendant. If A owns a tract of land he may agree with B that he (B) may place fixtures or improvements thereon which shall retain a personal character, and be removable as personal property. This doctrine is recognized in Iowa

in the following cases: *Wenig v. City of Cedar Rapids*, 187 Iowa 40; *Fischer v. Johnson, Lane & Co.*, 106 Iowa 181; *Melhop, Son & Co. v. Meinhart*, 70 Iowa 685; *Walton v. Wray*, 54 Iowa 531; *District Twp. of Corwin v. Moorehead*, 43 Iowa 466, and cases therein cited.

Such contract is held to be a valid and enforcible contract, and under this doctrine, it would be equally true that, where a man owns a house and lot, he may contract by specific agreement with another party that the house shall belong to the other party and be treated as personalty. This is what is generally treated in the law as ''a constructive severance,'' and is recognized in *Robertson v. Phillips*, 3 G. Greene 220; *Denham v. Sankey*, 38 Iowa 269; *Hull & Co. v. Alexander*, 26 Iowa 569; *Wenig v. City of Cedar Rapids*, 187 Iowa 40.

When such an agreement has been made between two parties and not made of record, it is of no validity against a subsequent purchaser, or a person standing in the position of a purchaser without notice of such severance. *Moore v. Moran*, 64 Neb. 84 (89 N. W. 629); *Russell v. Meyer*, 7 N. D. 335 (75 N. W. 262, 47 L. R. A. 637); *Cochrane v. McDermott Advertising Agency*, 6 Ala. App. 121 (60 So. 421); *Smith v. Waggoner*, 50 Wis. 155 (6 N. W. 568); *Fenlason v. Rackliff*, 50 Me. 362; *Lacustrine Fer. Co. v. Lake Guano & Fer. Co.*, 82 N. Y. 476.

On the other hand, it is held that, if the purchaser has notice of an agreement of severance, it is binding upon him. *Mitchell v. Freedley*, 10 Pa. St. 198; *Williamson v. City of Clay Center*, 150 C. C. A. 343 (237 Fed. 329); *Muehling v. Magee*, 168 Mo. App. 675 (153 S. W. 787); *Hensley v. Brodie*, 16 Ark. 511; *Keeney v. Whitlock*, 7 Ind. App. 160 (34 N. E. 502); *Goff v. O'Connor*, 16 Ill. 421; 26 Corpus Juris 693, and Notes 2 and 7.

It therefore becomes necessary and material to the determination of the question before us to review the evidence to find whether or not Schiltz had knowledge or notice of the existence of the outstanding agreement in favor of Jenkins, recognizing that Jenkins was the owner of these buildings and had a right to remove the same. We turn, therefore, to the evidence.

As would be expected, Schiltz testifies that he knew nothing whatever about this severance until after the contract was executed; while Ferguson and one of his employees testify that

they advised Schiltz of this severance before the contract was made. Schiltz testifies that:

About two weeks after the contract was made, Jenkins approached him, and said, " 'I understand you bought those lots,— that ground out there on Beaver,' and I said, 'Yes.' 'Well,' he says, 'I thought I would come down and see if I could interest you in those buildings,' and I said, 'What buildings?' and he said, 'Well, those buildings on the ground,' and I said, 'What are you talking about? Those are my buildings.' He said, 'Why, no, you are mistaken, those are my buildings.' I says, 'You are all wet. I bought that property, it is my property, and there was nothing said to me about those being your buildings.' I told him I would take the matter up with Ferguson,—that he contracted to deliver a clear title; and I called up Ferguson, and told him there was a party down there, claiming that he owned the buildings. Ferguson said, 'Oh, is that so? Who is he?' I told him substantially what Jenkins claimed, and he said, 'I thought you knew that,' and I said, 'You know full well, Mr. Ferguson, I didn't know that.' He said, 'Didn't Beverly tell you?' and I says, 'No, he didn't mention a word about it,' and he says, 'Well, I will send Beverly down to see you.' Beverly came down, and said: 'Well, I thought you knew all about it. I thought you knew about the buildings' not going with the ground.' "

This conversation with Beverly is not denied, and with reference to the conversation with Jenkins, he (Jenkins) says that he met Ferguson at the Des Moines Club, and was advised by him that he had sold these lots to Schiltz. He further says:

"I went down to see Mr. Schiltz, and told him I understood he had bought the lots, and he says, 'Yes.' I said, 'Well, how about the buildings?' and he says, 'Well, what do you mean?' He says, 'The buildings are mine,' and I said, 'Not by long shot,—I built them, and they belong to me.' I says, 'I thought probably you might want to buy the buildings, and then lease the ground to someone to operate a business; or if you care to, I might co-operate with you, to work up a party to lease the building from me and the ground from you.' He said, 'Well, I

don't know about that.' He says, 'You better go up and see my attorney about that.' ''

Jenkins further testifies that he went to see the attorney, Shuttleworth, and told him what Schiltz had told him (the witness), and Shuttleworth said:.

''Well, you don't have any lease recorded,—on record at the courthouse; and if it is not on record, how can you expect to have consideration?''

The conversation which Schiltz testifies that he had with Ferguson after Jenkins came to see him is not denied by Ferguson. Schiltz also testifies that, before he entered into the contract, he had a talk with Beverly, who suggested that he (Schiltz) could rent this property, and make an income to pay the taxes and expenses, and that Beverly did not then say that the buildings did not go with the land. This conversation is not denied by Beverly.

Schiltz further testifies that, after he was advised that Jenkins claimed to own these buildings, he demanded a clear title from Ferguson, including the buildings.

''I told Ferguson that, if this man had any claim, it was up to him to settle it. I expected a clear title to the property.''

Schiltz testifies that, after these demands on Ferguson for a clear title, he supposed that he (Ferguson) had made some settlement with Jenkins, relative to Jenkins's claim to the buildings; yet Ferguson, after being thus advised of Schiltz's demands, made a straight warranty deed to said property.

Later, in a conversation with one Oliver, who was another employee of Ferguson's, he said: ''I most certainly do expect a clear title.'' The witness Oliver seems to have been the representative of Ferguson in closing the deal.

Ferguson and his employee Beverly testify that, at the time the contract was made, Schiltz told them to see what they could buy the buildings from Jenkins for, and that they attempted to make such purchase for Schiltz, and advised Schiltz what they could be bought for, and Schiltz claimed it was too much money. Schiltz denies any such conversation, and the defendant used Jenkins as a witness in his behalf, and he testifies to no attempt

or conversation with Ferguson or his employees about Schiltz's buying the buildings.

There are other items of testimony through the record, indirectly bearing on these questions; but, taking the record as a whole, we are disposed to reach the conclusion that Schiltz did not know of this severance at the time he purchased this property; and, under the rules suggested above, governing matters of this kind, while the severance was good, as between Ferguson and Jenkins, yet Schiltz purchased without any knowledge of such severance, and, this being true, the severance would not be binding upon Schiltz. It must necessarily follow, therefore, that Schiltz was entitled to the relief prayed for in his petition, and the court erred in holding otherwise.

Plaintiff may have judgment accordingly in this court, or, on election, it may be remanded to the district court for judgment in accordance with this opinion.—*Reversed.*

MORLING, C. J., and EVANS, STEVENS, FAVILLE, DE GRAFF, KINDIG, WAGNER, and GRIMM, JJ., concur.