H. C. McCOUN, Plaintiff, Appellee, v. A. W. DREWS, Defendant, Appellant; S. D. CRARY, Intervener, Appellant.

No. 43334.

FEBRUARY 18, 1936.

228

Ben H. Morrison, and O. D. Nickle, for appellants.

S. D. Crary, pro se.

Prichard & Prichard, for appellee.

HAMILTON, J.—Plaintiff was engaged in the business of selling gasoline at wholesale under the name and style of Mapleton Oil Company, and one C. D. Vigen was operating a garage on leased premises under the name and style of C. D. Vigen Company, all of Mapleton, Monona county, Iowa. On the 31st day of August, 1927, these parties entered into a written contract which, omitting the formal parts, is in the following language:

"Whereas, the party of the first part (the oil company) desires to furnish, and party of the second part (C. D. Vigen Co.) desires to buy gasoline from the party of the first part, it is hereby agreed by and between the parties that the party of the first part is to furnish party of the second part one 500 gallon tank and one lever-operated, Fry pump installed not later than October 1, 1927, said tank and pump to remain the property of the party of the first part at all times, and it is hereby understood that at any time the party of the second part ceases to sell gasoline for party of the first part, said tank, pump and equipment may be removed. * * * Party of the second part is to handle the Mapleton Oil Company gasoline only through said tank and pump. * * * Second party is to pay first party the prevailing tank wagon price for same, less quantity discount of 1¢ per gallon. * * * In addition to the above, party of the first part agrees to pay party of the second part the sum of $10.00 per month for the term of this contract, said contract to be effective the first day of September, 1927, and to run until the first day of September, 1928."

The garage property is situated on the east 60 feet of lot 17 in block 7. Plaintiff installed said tank under the surface of the ground in the street in front of said lot. It was buried in the ground under the parking in front of said premises, and the ground was then covered with concrete pavement, which pavement was used also as a driveway for ingress and egress to the garage. The pump was firmly attached to said concrete by bolts and burs. Said garage was used for the servicing of automobiles, repairing the same and for automobile sales, and for the sale of gasoline, oils, and other lubricants. Intervener acquired title to said lot on September 7, 1927 (just one week after said tank and pump were installed). Intervener had no knowledge or notice of the ownership of said tank and pump by the plaintiff, and "believed said tank and pump to be owned with the building located on said described real estate and as a part of its equipment." C. D. Vigen quit possession of said premises about April 1, 1928. Several successive tenants occupied said premises, and on the date this suit was started the defendant was the tenant in possession of said premises under a lease with intervener.

About the first day of October, 1934, plaintiff sought to remove said tank and pump, but was prevented from doing so by the defendant, and this action was commenced soon thereafter against the defendant, A. W. Drews. S. D. Crary, an attorney, intervened in said action, claiming to be the owner of said premises, and praying that he be adjudged to be the owner of said tank and pump and that plaintiff be estopped from having or claiming as against the intervener and defendant any right, title, or interest in and to the same. The trial court found for the plaintiff and that plaintiff was the owner of, and entitled to the immediate possession of, the pump and tank, and that the same were reasonably worth $80, and that execution issue therefor or delivery of same or the value thereof to the plaintiff as provided in section 12195 of the Code. Plaintiff elected to take a money judgment in the sum of $80 and costs, in lieu of the specific property against the defendant and intervener in said cause, and it is from this judgment and decree that the defendant and intervener have appealed to this court.

It is the claim of appellants that the pump and tank when installed and used in connection with the garage business, even though the same were located in the street and in no way attached to or affixed to the real estate or any building or fixture

upon said real estate constituting the garage property, nevertheless became what is known in the law as a "fixture" and passed with the sale and transfer of said real estate. We are thus confronted with the ever vexatious question of determining when an article of personal property becomes a fixture in the sense that it is said to be part of the real estate. The case has been argued by counsel for appellants with a degree of zeal, earnestness, and ability quite out of proportion to the importance of the question or the value of the property involved, and the brief and argument shows an extensive research into the authorities dealing with the question of fixtures. We have examined these numerous citations and given to each of appellants' propositions our careful attention, but we do not find it necessary nor deem it appropriate to discuss or analyze each and all of said legal propositions. There is little controversy between the parties over the legal propositions. The troublesome question is encountered when we attempt to apply the legal propositions to the fact situation.

The theory of the law by which an article which was a chattel, but which, by being physically annexed or affixed to the realty, becomes accessory to it and a part and parcel of it, and therefore a fixture, has developed around the idea and thought that to sever such article is to destroy it or its use and injure the realty to which it is affixed or attached, or to which it has become, by means of such attachment, an accessory, and, it being the duty of the courts as far as possible to prevent injury and destruction of property and in furtherance of this duty to so construe the law that the usefulness and value of such property as a whole be maintained, courts have quite generally adhered to the principle that, where personal property is affixed to the soil in such a way as to become an accessory to the real estate or appropriate or applicable to the use or purpose to which that part of the real estate with which it is connected is appropriated, it was the intention of the parties in placing the same in this situation to make it a part and parcel of the real estate, and that, as between vendor and vendee, mortgagor and mortgagee, such fixtures pass by deed or mortgage of the real estate itself. This rule has been relaxed and qualified and exceptions made thereto quite often in the case of landlords and tenants and other analogous situations. In the leading case in this state, Ottumwa Woolen Mill Co. v. Hawley, 44 Iowa 57, 24 Am. Rep. 719, the

court announced three essential characteristics of a fixture: (1) Actual annexation to the realty or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; (3) the intention of the party making the annexation to make a permanent accession to the freehold.

The rule is quite clearly and succinctly stated by the Texas court in the case of Keating Implement & Machine Co. v. Marshall Electric Light & Power Co., 74 Tex. 605, 12 S. W. 489, 490, in the following language:

"The weight of the modern authorities establish the doctrine that the true criterion for determining whether a chattel has become an immovable fixture consists of the united application of the following tests: First. Has there been a real or constructive annexation of the article in question to the realty? Second. Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected? Third. Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold; this intention being inferable from the nature of the article, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation, and purposes or use for which the annexation is made. And, of these three tests, pre-eminence is to be given to the question of intention to make the article a permanent accession to the freehold, while the others are chiefly of value as evidence as to this intention."

In the case of McGorrisk v. Dwyer, 78 Iowa 279, 282, 43 N. W. 215, 216, 5 L. R. A. 594, 16 Am. St. Rep. 440, a replevin suit involving a track scale used in connection with an elevator, this court said:

"It remains to be considered if the scale, in view of the facts of the case, is a fixture belonging to the elevator. In this respect much depends upon the intent and purpose with which the scale was placed, as it was in connection with the elevator; the intent and use, in such cases, having much to do with determining its character as a fixture. * * * The entire testimony in the case shows that the scale was bought for use with the elevator, and, after being adjusted, it was mainly used for the purpose of

carrying on the business of the elevator. It seems to have been as much a part of the elevator, for the purpose of its business, as the machinery in the elevator, and for such purposes as closely connected therewith. The connection of the scale to the elevator by means of the hopper frame was open, visible, and could easily be known by all.''

The question arose between the holder of a chattel mortgage covering a certain elevator ''with all the machinery therein, and *all the fixtures thereto belonging*,'' and a judgment creditor who, under execution, had levied upon the scale. It appears that the mortgagor had leased the land upon which the elevator was situated from the railroad company, and the leased premises came within four feet of the railroad track. They placed the scale under the railroad track with the permission of the company on land that was not covered by the lease, and the scale was adjusted and connected for use with the elevator, and the point was urged that the scale was not on the land leased of the railroad company for the purpose of erecting the elevator, and the court said:

''We see no particular force in the argument. It is on land adjacent thereto, and so adjusted as to be used in connection with the elevator, and would be as clearly a fixture in one case as in the other, as between these parties. It was placed on the land adjacent by license from the railroad company, and the railroad company makes no question or claim as to the scale.''

Another case cited and relied upon by appellants is Thomson v. Smith, 111 Iowa 718, 721, 83 N. W. 789, 790, 50 L. R. A. 780, 82 Am. St. Rep. 541, being another scale case where the scale extended a few inches into a neighboring lot, and it was held that this was not material, as the owner of said lot had made no objection, and the court cites and relies upon the Dwyer case hereinbefore mentioned. However, in the discussion of the essential elements or requisites of a fixture, it does not lend support to appellants' theory. The court in this case said: ''Annexation is the *sine qua non* of an article, in order that it be a fixture. But it has long been recognized, as in the above case, that a physical attachment to the realty is not always essential. [Citing cases.]''

Our court quotes with approval from the case of Walker v. Sherman, 20 Wend. (N. Y.) 636, the following language:

" 'Nothing of a personal nature in itself would pass under a deed to land unless it be brought within the denomination of a fixture by being in some way permanently, at least habitually, attached to the land or some building upon it.' "

And quotes again from a Minnesota case, Wolford v. Baxter, 33 Minn. 12, 18, 21 N. W. 744, 745, 53 Am. Rep. 1, the following language:

" '* * * that, to make an article a fixture, it must not merely be essential to the business of the structure, but it must be attached to it in some way, or at least it must be mechanically fitted, so as, in ordinary understanding, to constitute a part of the structure itself. It must be permanently attached to, or the component part of, some erection, structure, or machine which is attached to the freehold, and without which the erection, structure, or machine would be imperfect or incomplete.' "

The court goes on to say:

"Boilers and engines by which machinery is propelled, merely resting on suitable foundations, have been repeatedly declared a part of the land. This is because so fitted to the foundations, which are unquestionably of the realty, and erected for the special purpose of sustaining them, that they are deemed a portion of the structure. And in numerous cases retention of heavy machinery or structures in place by force of gravity has been deemed sufficient attachment. * * *

"That the scales were placed for use in connection with the building admits of no doubt. The office therein was occupied by the defendant both in operating the mill and in dealing in grain for shipment. While the scales could possibly have been dispensed with in the former business, though with much inconvenience, they could not well have been in the latter. Besides, their actual rather than necessary use is the point involved. They were not only used in connection with the building in both businesses, but were set for that express purpose.

"The character of the annexation and the use, if found, is mainly of importance in determining the intention of defendant in making it. This intention is not the secret purpose of the owner, but that which should be implied from his acts. This is ordinarily to be inferred from the nature of the article, the manner and object of its use, and mode of its annexation. * * *

Everything indicates that the scales were intended to remain permanently where located, and to be continually used in connection with the land,—the character of the foundation, the connection with the beam inside, their convenience in defendant's business, both as miller and dealer in grain. That they extended a few inches in a neighboring lot is not material to this inquiry, as the owner of that made no objection. As well say a house a few inches over the line is not real estate. In O'Donnell v. Burroughs, 55 Minn. 91 (56 N. W. 579), relied on by the appellee, the scales were in the street."

These cases have been followed and the rules announced applied in many other cases, and in a recent case, Cornell College v. Crain, 211 Iowa 1343, 1346, 235 N. W. 731, 732, in an opinion by Justice Stevens, this court held that:

"Under the uniform holding of this court, the intention is paramount and really the determining factor."

In the Minnesota case of O'Donnell v. Burroughs, supra, the platform scales were placed in the street with the consent of the council. They were placed there by the owner of the property adjoining. The Minnesota court held in that case that the mere fact that the scales were in the street necessarily showed that they were temporary. The city council might ask the owner to remove them at any time. Hence it could not be said that they were placed there by the owner with the intention of being permanently located there, and that a sale of the premises by the owner would pass title to these scales. In the case at bar the articles of personal property, namely, the tank and pump, are not only in the street, they were placed there by a third party, neither by the owner nor by the tenant of the owner. It is the claim of appellants that plaintiff is a subtenant of the tenant of the garage property. Just how he could be a subtenant when the pump and tank are not located on any part of the property covered by the lease is not pointed out. The tank and pump were never sold to anyone. They were at all times the property of the plaintiff, merely loaned to the tenant of the garage property so long as he sold the gas furnished by plaintiff. No part of the pump or tank was attached in any way to or came in contact with the lot itself, nor were they attached to any other fixture or building or structure or machine upon said lot. True, they were

appurtenant to the use for which the lot was appropriated; namely, a garage. A filling station in connection with a garage is quite appropriate, but not essential, and cannot be said to be in any sense of the term necessary to the successful operation of a public garage. It was plainly obvious to any one purchasing the garage property that this pump and tank were out in the public street; that they had only recently been placed there; that the owner of the garage property was not occupying it, but the same was occupied by a tenant. Intervener says that he believed said tank and pump to be owned with the building located on said real estate and as a part of its equipment, but he furnishes the court with nothing to support his belief. There is not a word in this record as to the circumstances under which the intervener became the owner of the garage property. One may not close his eyes to that which is obvious and say that he believes a thing to be true when the obvious facts and circumstances would indicate just the opposite, or at least be such as to put him on inquiry. Here were a tank and pump out in the street, in no way attached to or connected with the property which he purchased. They were being operated by the tenant of such property under a contract which reserved the title and permitted their removal at any time by the plaintiff when the tenant ceased to sell the gas furnished by the plaintiff. The circumstances of their installation, therefore, indicate that they were not to be permanent. The circumstances of their location and the absence of any annexation to or connection with the real estate or with any other structure upon the real estate further evidence an intention that they were not to be of a permanent character. The council might require their removal at any time. At the time intervener purchased the lot, this pump had been in operation only a few days. Its removal might be accomplished by simply unscrewing the bolts. The tank could be removed by digging down beside the cement in the parking and refilling the hole with dirt, so as in no way to mutilate or injure or deface the garage property, and its removal would in no manner interfere with the business carried on within the garage building.

Numerous cases are cited in appellants' brief to sustain the rule that fixtures placed in an adjoining street or alley or partly on adjoining property pass by sale of the real estate to which they are appurtenant the same as though located on the premises conveyed. We have examined each and every one of said cases,

236

and in every case the articles of personal property, such as scales, telephone, or electric light wires and attachments in the street or alley or located off the premises have in each instance been in some way affixed or attached either to the premises themselves or to some structure situated upon said premises. The only case called to our attention involving the installation of a gasoline pump and tank is the Standard Oil Co. v. La Crosse Super Auto Service, Inc., 217 Wis. 237, 258 N. W. 791, 99 A. L. R. 60, where the facts are much stronger in favor of appellants' theory than in this case, and the Wisconsin court held that said equipment did not become a fixture. We have been cited to no case, and we know of no authority, holding that, where the article is wholly upon the street or alley or adjoining property and totally disconnected and in no way affixed to the property itself or any structure situated thereon, the same constitutes a fixture within the meaning of the law.

We are satisfied that under the statement of facts as disclosed by the record in this case the judgment and decree of the trial court was correct, and an affirmance of the case necessarily follows.—Affirmed.

DONEGAN, C. J., and KINTZINGER, MITCHELL, ANDERSON, and ALBERT, JJ., concur.