EQUITABLE LIFE ASSURANCE SOCIETY, Appellant, v. FRED W. CHAPMAN et al., Appellees.

No. 44444.

November 22, 1938.

Blythe, Markley, Rule, Dibble & Cerney, Lowell L. Forbes, and Birdsall, Archerd & McGrath, for appellant.

Nagle & Hill, for appellees.

STIGER, J.—Plaintiff brought this action in replevin for possession of a farm electric lighting plant claiming that it was entitled to possession under its sheriff's deed obtained through foreclosure of a real estate mortgage.

In 1909, Will Chapman erected a dwelling house on his 160 acre farm in Wright County. On March 1, 1910, he leased the premises to his son, Fred W. Chapman, one of the defendants, who continued to occupy the premises until he purchased the farm from his father in 1927. Fred W. Chapman will be referred to herein as the defendant. In 1919, defendant talked with his father about purchasing an electric lighting system for his use in the home. The substance of this conversation is as follows:

"Well, I was about to buy this plant for our own use, and I asked my father if I ever moved from the place whether he would try to keep it on the place or not. He said, 'Go ahead and put it in. It is your property and removable as such.' That is the substance of the conversation I had with my father."

Thereupon the defendant purchased from the defendant F. M. Claussen and installed an electric lighting plant, known as the Silent Alamo, which consisted of a generator, motor and batteries. To hold the generator and motor in place and prevent vibration it was necessary to attach it to a foundation or base which defendant built by pouring cement on the concrete basement floor. This base was 15 inches high, 2 feet long and 18 inches wide. Holes were drilled in this base and filled with molten lead and the unit was attached to the foundation by four lag-screws which were screwed into the lead. The batteries were placed on a shelf in the basement and were retained in place by their own weight. Electric current was transmitted by the gen-

erator to the batteries by wire and from the batteries to the house wiring system. This plant furnished current for the house, barn and garage. Sometime prior to 1927, the wires to the out buildings broke and were never repaired. The wiring installed could be used to conduct current from high tension lines or other generating systems without change. When the defendant purchased the farm from his father in 1927, it was incumbered by a mortgage to the plaintiff. At the time the sale was closed defendant executed to the plaintiff a new mortgage in the sum of $14,000. In 1929, the lighting system became unserviceable and the defendant replaced it with a new Delco Lighting Plant purchased from the defendant Claussen which also consisted of a generator, motor and batteries. This new lighting system was installed in identically the same manner as the first plant. To remove the plant from the house it was only necessary to unscrew the four lag-screws and disconnect the wire from the batteries.

In December, 1932, plaintiff commenced an action against Chapman to foreclose its mortgage. After the commencement of the action and execution sale, the defendant, in April, 1933, purchased new batteries from Claussen, trading in the old batteries and in addition gave his note to Claussen for $190 for the balance of the purchase price which stated that the note was secured by the Delco Light Plant. Plaintiff secured a sheriff's deed in the foreclosure proceedings in January, 1934. Defendant remained in possession of the premises as tenant until March 1, 1937. On February 26, 1937, Claussen, learning that defendant was leaving the farm on March 1, and his note being unpaid, wrote defendant demanding possession of the light plant. In compliance with this demand, Chapman, on March 1, 1937, delivered the plant and batteries to Claussen. On March 5, 1937, plaintiff commenced this action for the possession of the generator, motor and batteries.

At the close of the evidence, plaintiff and defendants each moved for a directed verdict. With the consent of counsel the jury was discharged and it was agreed that judgment might be entered by the court after its ruling upon the motions for a directed verdict which would have the same force and effect as a verdict returned by the jury under the direction of the court.

The trial court sustained the defendant's motion for a directed verdict, found that the defendant Claussen was in rightful

possession of the lighting plant when taken by plaintiff under the writ of replevin, and entered judgment in favor of Claussen against the plaintiff for the value of the plant.

It is the contention of the plaintiff that the original lighting plant and the replacement plant became a fixture when installed, and, being an integral part of the real estate, it was included in the real estate mortgage and plaintiff obtained title to the plant under its sheriff's deed. The claim of the defendants is that the plant at all times retained its status as a chattel.

The early case of Teaff v. Hewitt, 1 Ohio State 511, 59 Am. Dec. 634, in defining the essential elements of a fixture, stated:

"The true criterion of a fixture is the united application of the following requisites: 1. Actual annexation to the realty, or something appurtenant thereto. 2. Application to the use or purpose to which that part of the realty with which it is connected is appropriated. 3. The intention of the party making the annexation to make a permanent accession to the freehold."

With some qualifications, this court has adopted and adhered to the rule announced in the Teaff case. Ottumwa Woolen Mill v. Hawley, 44 Iowa 57, 24 Am. Rep. 719; Thomson v. Smith, 111 Iowa 718, 83 N. W. 789, 50 L. R. A. 780, 82 Am. St. Rep. 541; Speer v. Donald, 201 Iowa 569, 207 N. W. 581; Cornell College v. Crain, 211 Iowa 1343, 235 N. W. 731.

In the case of Ottumwa Woolen Mill v. Hawley, supra, we recognized that the first of the three requisites constituting a fixture—actual annexation to the realty—was an uncertain and unsatisfactory criterion, and stated that:

"The third requisite, being the intention of the party making the annexation to make a permanent accession to the freehold, is to our minds the controlling consideration in determining the whole question.

"The character of the physical attachment, whether slight or otherwise, and the use, are mainly important in determining the intention of the party making the annexation."

After reviewing our prior cases which considered this subject, Justice Stevens, speaking for the court in the case of Cornell College v. Crain, supra, stated [page 1345 of 211 Iowa, page 732 of 235 N. W.]:

"No doubt, this court has made the intention of the party annexing the improvement the paramount consideration in determining whether same is a fixture or a permanent part of the realty. The method of attachment to the soil is of significance, but not necessarily a controlling factor."

In the case of McCoun v. Drews, 221 Iowa 227, 265 N. W. 160, the court quotes with approval the following statement found in the case of Keating Implement & Machine Co. v. Marshall Electric Light & Power Co., 74 Tex. 605, 12 S. W. 489, relative to the third essential element of a fixture [page 231 of 221 Iowa, page 162 of 265 N. W.]:

"Third. Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold; this intention being inferable from the nature of the article, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation, and purposes or use for which the annexation is made. And, of these three tests, pre-eminence is to be given to the question of intention to make the article a permanent accession to the freehold, while the others are chiefly of value as evidence as to this intention."

The intention of the parties making the annexation is determined not alone from his expressed intention, and such intention must be reasonably inferable from the facts and circumstances surrounding the annexation.

In Thomson v. Smith, 111 Iowa 718, 83 N. W. 789, 50 L. R. A. 780, 82 Am. St. Rep. 541, the court quotes from the case of Wolford v. Baxter, 33 Minn. 12, 18, 21 N. W. 744, 745, 53 Am. Rep. 1, as follows [page 722 of 111 Iowa, page 790 of 83 N. W.]:

"To make an article a fixture, it must not merely be essential to the business of the structure, but it must be attached to it in some way, or at least it must be mechanically fitted, so as, in ordinary understanding, to constitute a part of the structure itself. It must be permanently attached to, or the component part of, some erection, structure, or machine which is attached to the freehold, and without which the erection, structure, or machine would be imperfect or incomplete."

In McGorrisk v. Dwyer, 78 Iowa 279, 43 N. W. 215, 5

L. R. A. 594, 16 Am. St. Rep. 440, the court, in holding that a track scale was a fixture, stated [page 282 of 78 Iowa, page 216 of 43 N. W.]:

"The entire testimony in the case shows that the scale was bought for use with the elevator, and, after being adjusted, it was mainly used for the purpose of carrying on the business of the elevator."

█ The defendant testified that he did not at any time intend the electric plant to become a part of the real estate. When the original plant was installed, Will Chapman, owner of the real estate agreed that defendant, his tenant, could purchase and install the electric plant and take it with him when he moved. Manifestly, both parties intended that the plant would remain personal property after its annexation. The defendant then proceeded to install the plant in a manner that indicates he did not intend it to be an integral, component part of the house. It was not essential to the operation of the farm nor was it mainly used for the purpose of carrying on his business of farming. It was a convenience. No part of the plant was attached to the real estate but was affixed to the cement base laid on the concrete floor by bolts for the purpose of holding the unit in place and to prevent vibration. The batteries were kept in place on the shelf by gravity. In the installation of the plant there was not the slightest change made in the house. It could be removed without a suggestion of damage to the house. The wiring could be connected with any type of electric plant or high tension wire.

The above facts tend to show that defendant did not intend to annex the plant as a permanent accession to the realty.

█ Plaintiff urges that the original plant when installed became a permanent part of the realty and the agreement between the owner and defendant for its removal constituted a constructive severance; that the defendant did not remove the plant at the termination of the tenancy; that when defendant purchased the reversion the two estates merged and thus the constructive severance was terminated and the plant resumed its status as real estate, citing Schiltz v. Ferguson, 210 Iowa 677, 231 N. W. 358, 26 C. J. 707. The doctrine of severance is not applicable here because we hold that the plant maintained at all times its character as a moveable chattel. If the plant had

been changed from a chattel to real estate by the installation, the defendant not having removed the plant at the termination of the tenancy and having obtained title to the reversion we think there would be merit in plaintiff's contention.

The replacement plant was installed and used in the same manner as the original plant. We hold that the defendant did not intend to make either electric plant (one being purchased as tenant, and the other being purchased as owner) a permanent accession to the real estate.

The evidence of plaintiff was insufficient to establish its cause of action and the trial court was right in overruling plaintiff's motion for a directed verdict and in sustaining defendants' motion, and in finding that the defendant Claussen was entitled to possession of the Delco Lighting Plant. The judgment appealed from is affirmed.—Affirmed.

SAGER, C. J., and HAMILTON, MITCHELL, DONEGAN, ANDERSON, KINTZINGER, and MILLER, JJ., concur.