JOE LAMBLE, Appellee, v. C. C. SCHREIBER et al., Appellants.

No. 46712.

JULY 27, 1945.

O. J. Henderson, of Webster City, and Herrick, Sloan & Langdon, of Des Moines, for appellants.

Burnstedt, Hemingway & Hemingway, of Webster City, for appellee.

MANTZ, J.—Plaintiff, Joe Lamble, sued defendants, C. C. Schreiber and Robert Walker, claiming that by various acts they removed from his farm in Hamilton County, Iowa, two portable hog houses and converted them to their own use, all without the knowledge or consent of plaintiff. He sued for their value. Defendants denied the claim of plaintiff but alleged that the hog houses were not the property of plaintiff but were the property of defendant Walker, who, in 1942, was a tenant of Schreiber. Defendant Walker filed a counterclaim against plaintiff but that is not involved in this appeal. The jury was waived, the cause tried to the court, and judgment was rendered in favor of plaintiff. Both defendants have appealed.

I. A brief statement of some of the relevant facts may be helpful in getting a correct understanding of the matters involved in the case. Dr. Schreiber, a dentist of about twenty-five years' experience, lived in Des Moines. He owned a two-hundred-acre farm in Hamilton County, Iowa. Prior to September 1942, he had leased the farm for a term of five years to appellant Walker. Appellee, Lamble, aged fifty-seven, was born in Alsace-Lorraine, France, and came to America in 1915. He never went to school here but could read and write. For some years the two-hundred-acre farm had been operated from another farm. Its improvements were poor. Some of these were torn down. Sometime in the spring of 1942, Schreiber employed a carpenter to build two portable hog houses on the premises for the use of Walker's hogs. The materials, old and new, were furnished or paid for by Schreiber, who likewise paid the carpenter and his helpers. At that time there were no hog houses on the farm and no facilities for the raising or handling

of hogs. Later in the summer of 1942, Schreiber solicited appellee to buy the farm, as he stood in need of cash to protect his wife's interest in some land being partitioned in Kossuth county. Sometime in September appellee purchased the farm, the deal being made by Schreiber personally, no agent being involved. Later in the year the tenant, Walker, advised appellee that Schreiber was trying to sell him the two hog houses. Appellee advised Walker, also Schreiber, that the hog houses had been purchased by him when he bought the farm and he told both of them not to remove them from the place. Schreiber, on February 26, 1943, through his attorneys, wrote appellee that:

"Dr. C. C. Schreiber * * * has transferred the title and possession of the following described personal property located on said land to Robert Walker, said property being described as follows: 1. Two (2) portable hoghouses."

Walker continued on the farm as tenant of appellee for the year beginning March 1, 1943, and when he removed therefrom a year later took with him the two hog houses and placed them on another farm which Dr. Schreiber had purchased and later leased to Walker.

II. Various issues are raised in this appeal. As we view the situation the controlling issues are (1) whether these two hog houses belonged to the farm when Schreiber sold it in September 1942, to appellee (2) also whether or not they had been sold by Schreiber to Walker before Walker's tenancy to Schreiber terminated on March 1, 1943 (3) also the issue argued as to the value of the hog houses at the time they were removed from appellee's farm.

The appellants join in argument in this court. They have argued here that the court erred in holding that in transferring the hog houses from Schreiber there was a joint conversion. We do not think that this issue was raised in the lower court; consequently, we cannot consider it here. We think it unnecessary to cite authority on this proposition.

III. As propositions 1 and 2 set out above are closely related, we will consider them together. These two matters are fact questions. As the case was at law and was submitted to

the court without a jury, the finding of the trial court has the same force and effect as a verdict of the jury.

Appellants argue that under the undisputed facts there was no question of fact to be decided by the court and that tribunal erred in refusing to direct a verdict. Appellants' argument, in substance, is that the hog houses belonged to Walker when Schreiber sold the farm to appellee in September 1942; that Schreiber had given them to Walker in payment for Walker's labor in demolishing some old buildings on the farm; that such structures were not fixtures and could be removed as the property of Walker.

We have carefully examined the record and find ourselves unable to agree with either of these contentions. We hold that there was a sufficient conflict of evidence in the record to generate a fact question and that there was sufficient evidence therein to sustain the finding of the court. We will later set out some of the record which we think supports the view of the trial court that the two hog houses were fixtures; also that they were the property of Dr. Schreiber when he sold the farm to appellee in September 1942.

Our court has on many occasions had before it the question as to what was or was not a fixture. Our decisions hold that its determination is a fact question. Cornell College v. Crain, 211 Iowa 1343, 235 N. W. 731; Equitable L. Assur. Soc. v. Chapman, 225 Iowa 988, 282 N. W. 355; Walker v. Puck, 236 Iowa 686, 8 N. W. 2d 701.

One of our latest pronouncements upon that subject will be found in the case of Walker v. Puck, supra. That was a controversy as to whether certain farm property, such as farm pumps, window frames, steel posts, and barbed wire, were fixtures. This court, Hale, J., held that the general test to be applied in determining what are fixtures is annexation to realty, either actual or constructive; the application or adaptation to the use or purpose to which that part of the realty to which such articles were connected is appropriated; and the intention to make such articles a part of the real estate. The cited case further holds that each case wherein the question of fixtures is

involved is to be determined not only on the circumstances and nature of the annexation and the uses to which the property is put but also upon the relation of the parties.

In this case Walker was a tenant of Schreiber under a five-year lease on the two hundred acres sold by Schreiber to Lamble in September 1942. In May or June of that year Schreiber employed a carpenter to build two hog houses on the farm; at that time there were no hog houses on the farm; the materials used were in part old lumber from other buildings on the farm and in part new, all of which were furnished or bought and paid for by Schreiber, who likewise paid the carpenter and his helpers; the hog houses were used by the tenant and, being on sill skids, could be dragged from one location to another. The evidence shows that this is customary on farms. In many instances where hogs have diseases the hog houses are moved to new locations.

These hog houses were on the farm when appellee bought it from Schreiber in September 1942. Appellee testified that Schreiber was urging him to buy and assured him, upon inquiry, that everything on the place went with it except a pile of old lumber which belonged to the tenant. He also testified that later in the year, after he had bought the farm, Walker told him that Schreiber was trying to sell the hog houses to him (Walker). Schreiber testified that he told Lamble (appellee):

"I told Joe Lamble I was tearing down the crib and I had already torn down the machine shed, and that I was going to use the lumber from the cribs to build hog houses. I said Robert Walker [tenant] didn't have any place for his pigs, and I was going to get two hog houses built there so he would have a place to care for them. Robert Walker had volunteered to do the work if he could get the hog houses and have a place to keep his hogs."

There was evidence outside of that of the parties that about the time the sale contract was signed, when asked if he claimed anything on the farm, Schreiber answered that he did not outside of a pile of wood which he wanted for the tenant. There is nothing in the record to indicate that Walker paid Schreiber for the hog houses. True, he did some work thereon, and had

torn down an old building or two and used some of the material in the two hog houses. There is evidence in the record that frequently tenants, in order to obtain buildings or fences, donate their labor.

There are numerous conflicts in the testimony. Much given by appellee is disputed and contradicted by appellants. Various conclusions and inferences can be drawn therefrom. Dr. Schreiber claims that when he sold to appellee in September 1942, he did not own the hog houses; that they then belonged to Walker, the tenant. However, the evidence does show that when it was planned to build these structures there were then on the place no facilities for hogs; that appellee suggested the name of a carpenter and went with Schreiber to hire him to build the structures; that Dr. Schreiber stated that the hog houses were being built "for the farm." The contract of sale was prepared by Dr. Schreiber, although appellee wanted it drawn by his banker. Dr. Schreiber testified that before the contract of sale was signed appellee said that he wanted to see a lawyer, but that he told appellee that it was unnecessary for him to see a lawyer. The contract does not mention the hog houses, although it does refer to certain things which were to be left in the house. It strikes us as being somewhat singular that if Schreiber had given the hog houses to Walker in May or June, and in September sold the farm to appellee, he made no mention of that fact in the contract, which he personally prepared. Another matter which it seems to us negatives the claim of Dr. Schreiber that he gave the two hog houses to Walker in May or June is a letter written to appellee by the attorneys for Dr. Schreiber on February 26, 1943, in which the matter of the two structures is mentioned. Dr. Schreiber lived in Des Moines. When he tried to move some things off the farm in February 1943, Walker advised appellee of this move and the latter went to the farm and refused to allow the things to be moved. Dr. Schreiber came up from Des Moines and found appellee on the farm and was told by appellee that he would not permit him to take the things off the place. Following this, and on February 26, 1943, the attorneys for Dr. Schreiber wrote appellee about certain property on the farm, including the hog houses, and said in effect that Dr. Schreiber

*has* transferred such property to Robert Walker. The trial court in the findings seemed to attach considerable significance to this letter, and we quote from the language of the court as follows:

"So far as Dr. Schreiber is concerned, the idea of an original vesting of title in Mr. Walker, incident to their construction, is repudiated by his letter of February 26th. 1943. This letter was written after a dispute with reference to property which Dr. Schreiber sought to remove and may fairly be said to have been a definite report by the Doctor to his attorney of what he had consummated a short time before, with Mr. Walker."

With the issues clearly drawn, and with the evidence in conflict, we hold that the court was warranted in finding in favor of appellee and did not err in overruling appellants' motion for a directed verdict.

IV. There was another matter presented wherein appellants claimed that the court erred in the allowance of damages. Appellee claimed damages in the amount of $500 for the two hog houses. The court in its judgment awarded appellee the sum of $250, with five per cent interest from February 26, 1943. There is in the record ample evidence which supports the finding of the trial court. In re Estate of Canterbury, 226 Iowa 586, 284 N. W. 807.

In connection with the foregoing matter we question whether the matter of the value of the hog houses was in issue in the trial court.

We hold that the trial court did not err in finding in favor of appellee, Lamble. The case is affirmed.—Affirmed.

All JUSTICES concur.