WILLIAM WINNIKE, Appellant, v. T. F. HEYMAN, Appellee.

FIXTURES: Intention and Manner of Construction. Improve-
1 ments are not trade fixtures, but a part of the realty, when added by a tenant with intention to permanently annex them to the realty, or when, with a contrary intent, he so constructs them that they may be removed only by doing substantial injury to the realty.

FIXTURES: Innocent Purchasers. Purchasers of realty which is
2 in the possession of a tenant, take title to improvements placed thereon by the tenant, when such improvements appear to be a permanent part of the realty, and no fact suggests any inquiry to the contrary.

*Appeal from Carroll District Court.*—M. E. HUTCHISON, Judge.

DECEMBER 14, 1918.

ACTION to recover damages consequent upon the removal of a second floor constructed by a tenant in one end of the demised building, and a stairway thereto. At the close

of evidence, the court, on motion, directed a verdict for de-
fendant, on which judgment was entered. The plaintiff ap-
peals.—*Reversed.*

*Brown McCrary,* for appellant.

*W. C. Saul* and *W. I. Saul,* for appellee.

LADD, J.—I.  MacLagan owned Lot 1 and part of Lot
2 in Block 21 in Carroll, on which stood a brick building.
The defendant, as lessee of MacLagan, occupied one room
thereof, 19 feet wide and 39 feet long, and
basement, as a candy store and ice cream
parlor, from about 1902 until sometime in
1916.  In 1909, MacLagan conveyed the
premises by warranty deed to Guy.  It appears that there
was a balcony at the back end, about 6 or 7 feet wide, and
7 feet above the floor, with a narrow stairway up to it.  This
balcony was attached by two iron rods to the joist above,
and rested on a 2x4 scantling, the back and the ends being
nailed to the walls and two posts in front.  According to
Heyman, MacLagan told him he could build onto the bal-
cony or take it down, and he built onto it twice, prior to the
conveyance to Guy, and put in an oak stairway after such
conveyance.  Heyman yielded possession in 1916, and in do-
ing so, removed the balcony, as extended, and also the stair-
way; and in this action, plaintiff, Winnike, who went into
possession as lessee of Guy, for himself as assignee of Guy,
seeks to recover the value of the property removed, and the
consequent damages to the building.  The defendant alleged
that the floor and stairway constituted trade fixtures, and
that he had the right to remove them.

But two questions are involved, though appellant's ar-
gument has taken a wide range:  (1) Whether the extended
balcony and stairway were trade fixtures; and (2) whether
Guy acquired title to said balcony as extended, under his
warranty deed from MacLagan.

1. FIXTURES:
intention and
manner of con-
struction.

"Trade fixtures" is a term usually employed to describe property which a tenant has placed on rented real estate, to advance the business for which it is leased, and which may, as against the lessor, be removed at the end of the tenant's term. *Ray v. Young*, 160 Iowa 613, where rules on the subject are gathered. That the floor or extended balcony was constructed in connection with the defendant's business, there can be no doubt; and from the evidence, the jury might have concluded that defendant had no intention that the additions should become a permanent part of the improvement. He bore the expense, and MacLagan had no connection therewith, save in saying to defendant that "he could build onto the balcony or take it down." There was nothing in its appearance, as extended, to indicate that it was other than a permanent structure. Brick were removed from the wall, and the ends of the joists inserted in the holes left, and the floor rested on these joists. From the first floor, an oak stairway led to the floor above. In 1916, defendant notified Guy that he would yield possession, and Guy leased the premises as they then were, to plaintiff. Guy was without information as to who had constructed the second floor; and, though the stairway was installed after he obtained title to the property, he knew nothing concerning this. Shortly thereafter, defendant removed the floor and stairway, leaving some of the joists sticking in the walls, and the holes out of which the ends were taken were not repaired. The brick were replaced and plastered in by plaintiff at considerable expense; and for this, recovery was sought.

One Johnson testified that he had removed the floor and stairway for defendant; "took it out in pieces, the stairway in one piece;" and that there was no substantial injury to the building after the brick should be replaced; that they could have pried the joists out, but sawed them off; that the floor had the appearance of being fastened into the

building, and "it would not hurt a great deal to tear the floor down to the building. It would probably injure it some. * * * It would not injure the walls of the building after it was repaired. You may mar it, but you can't fix it. Even if plastered up, it could not be the same as before."

Hoffman swore that, "by taking the stringers out and putting the brick in there and walling that up, I don't think it would hurt the building. I think it was a twelve-inch wall, and would not take over one brick out;" and that the building was more rentable with the two floors in than with but one.

From this evidence, we think the issue as to whether the floor and stairway were trade fixtures was open to the jury. The manner of putting in the joists was strongly indicative of a purpose to make them a part of the building. Nothing about the floor or stairway suggested any separation from the building, and there was room for finding that the removal of the floor with the joist wrought an injury thereto. In a somewhat similar case, the appellate court of Illinois held that the floor might not be removed without injury, even though the wall continued about "as strong as ever," and declared it a part of the realty. In *Shapira v. Barney,* 30 Minn. 59, a platform was erected in "defendant's building, by Finkelstein & Co., his tenants, while occupying it as a furniture store; that they erected it with the knowledge and consent of defendant, and at their own expense, to be used in displaying their goods; that it was fastened to four scantlings, which were nailed to the walls of the building, the stairs to it being fastened at one end to the platform, and at the other end to the floor; that, although it could not be removed without being taken apart, yet it was capable of being severed and taken away without any great injury to the building." The court held that it was a trade fixture.

Whether the additions in question are to be regarded as trade fixtures depends on the intention of defendant in putting them in, the manner of their attachment to the building, and the manner and purpose of their use in connection therewith; and possibly other matters. If the tenant intended permanently to annex them to the building, or if they might not be removed without substantial injury thereto, they are not to be regarded as trade fixtures, but as a part of the realty. If, however, the tenant entertained no such intention, and they might be removed without substantial injury to the building, then they are trade fixtures, and defendant had the right to remove them. The issues as to intent and as to substantial injury to the building should have been submitted to the jury.

II. The assignor of plaintiff, the owner of the premises, purchased same of MacLagan without notice that the balcony or upper floor had been erected by defendant, or that any claim to it as a trade fixture existed. The evidence was such as to warrant a finding that the floor, including the joist, appeared to be a permanent part of the building, there to be used as part of the realty, and essential to its beneficial enjoyment. If so, the law protected Guy as an innocent purchaser, and the floor passed under the conveyance to him. *Bullard v. Hopkins,* 128 Iowa 703; *Stillman v. Flenniken,* 58 Iowa 450; *Roth v. Collins,* 109 Iowa 501.

2. FIXTURES: innocent purchasers.

Appellee relies on *Crooks v. Jenkins,* 124 Iowa 317, where it was held that the notice charged by possession of a tenant is not limited to rights incident to his tenancy, but extends to all interest acquired by collateral or subsequent agreements, and on the doctrine of Mr. Pomeroy, that:

"Possession of a third person is said to put a purchaser upon inquiry, and he is charged with notice of all that he might have learned by a due and reasonable inquiry of the

occupant, with respect to every ground, source, and right of his possession. Anything short of this would fail to be reasonable and due inquiry."

This in no manner conflicts with the decisions cited above. Had there been anything about the floor reasonably to have put Guy upon inquiry in purchasing the property, as to whether it was a trade fixture, he must have ascertained the facts in relation thereto from the tenant. But, in so far as appears, there was no more reason for so doing than to inquire concerning who had put down the first floor. or other parts of an apparently completed building. Nothing about the premises or possession thereof suggested inquiry concerning the upper floor or interest of the tenant therein; and plaintiff, as assignee of Guy, under the evidence, was entitled to recover damages consequent on the removal of said floor. There was sufficient evidence, at least, to carry to the jury the issue as to whether plaintiff might recover damages consequent on the removal of the floor. As to whether plaintiff was entitled to a directed verdict, we express no opinion.—*Reversed.*

PRESTON, C. J., EVANS and STEVENS, JJ., concur.