**In re Merlin Allen VAN HOVE and Lalonie Kay Van Hove, d/b/a Van Hove Brothers, Debtors.**

**Bankruptcy No. 87–01308–F.**

United States Bankruptcy Court, N.D. Iowa.

Jan. 25, 1988.

Eldon J. Winkel, Winkel & Winkel, Algona, Iowa, for debtors.

Timothy Hogan, Duncan, Jones, Riley & Finley, P.C., Des Moines, Iowa, for Equitable.

Gordon L. Winkel, Winkel & Winkel, Algona, Iowa, for James Van Hove.

Joseph F. Flattery, Hogan, Lose & Flattery, Fort Dodge, Iowa, trustee.

---

## MEMORANDUM OF DECISION RE MOTION FOR DECLARATORY JUDGMENT

WILLIAM L. EDMONDS, Bankruptcy Judge.

This matter comes before the Court on a motion seeking a determination of the respective rights of the parties in a grain bin located on real property owned by the debtors.

Although this normally would be a matter pursued as an adversary proceeding, the parties, Equitable Life Assurance Society of the United States (Equitable) and James Van Hove, waived any objection to this defect.

This Court has jurisdiction pursuant to 28 U.S.C. section 157(a) and 28 U.S.C. section 2201. This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(K).

Trial was held on November 19, 1987.

The Court, having heard the evidence, issues the following Ruling which shall constitute Findings of Fact and Conclusions of Law pursuant to Bankr.R. 7052.

## FINDINGS OF FACT

1. On June 3, 1987, Merlin Allen Van Hove and Lalonie Kay Van Hove, husband and wife, filed their joint voluntary petition under Chapter 7 of the Bankruptcy Code.

2. In July 1977, Merlin and Lalonie Van Hove executed a promissory note to the Equitable Life Assurance Society of the United States. (Equitable exhibit no. 1).

3. The Van Hoves secured this debt by granting to Equitable a real estate mortgage on real property located in Kossuth County, Iowa. The mortgage was filed of record in the office of the Kossuth County Recorder at File No. 2433, Book 180, pages 137–138 on July 28, 1977.

4. The mortgage granted a security interest on the real property described together with its "appurtenances."

5. Merlin Van Hove and his brother James formed a partnership in 1960 which did business under the name of "Van Hove Brothers". The business of the partnership was farming. The partnership, however, owned no land. Each of the brothers had separate interests in farm land. The partnership farmed the partners' land.

6. In 1974, the partnership purchased and had installed a grain bin at a cost of $7,000.00 plus the cost of cement work. The cost of the cement base was between $600 and $700.

7. The partnership obtained a government loan to finance the purchase of the grain bin, but this government loan was subsequently paid in full.

8. The metal grain bin was erected on a cement base or slab which was six inches to seven inches thick. There was some but "little" footing placed below ground. The bin was bolted to the cement slab. It is a Chief bin with a capacity of 10,000 bushels of corn. The height of the bin is 21 feet from the base to the eave. Additional height is added by the peaked roof. A utility pole has been erected near the bin for the purpose of supporting electric lines to provide power for the unloading auger. Hereinafter this bin will be referred to as the "1974 bin."

9. A second and similar bin was purchased by the partnership in 1979 and erected near the first at the same site. Hereinafter this bin will be referred to as the "1979 bin."

10. The two bins were used to dry and to store corn. The corn was dried in the 1979 bin and moved by auger to the 1974 bin.

11. The 1974 bin was put up on the real estate of Merlin and Lalonie Van Hove because it was better ground for the construction of a bin. The second bin was constructed at that site not only because of the topography but also so the bins could be used in tandem. The bins, however, are capable of separate use. The total 20,000 bushel capacity of the two bins is greater than is necessary for the 80–acre farm on which it was located.

12. The partnership listed both bins on its partnership depreciation schedule which the partnership used for its annual tax returns.

13. In 1981, the brothers decided to dissolve their partnership arrangement, and on December 11, 1981, they executed a written dissolution agreement.

14. The partnership dissolution agreement contained the following paragraph:
"5. The Parties further acknowledged that there are two steel bins owned by the partnership which are to be divided. James Van Hove shall have the right to move the east one and if moved, Merlin Van Hove will pay ½ of the cost of moving and leveling of a site for the placement of same. If not moved by James Van Hove, it shall be purchased by Merlin for fair market value."

The east bin referred to in the foregoing paragraph is the 1974 bin.

15. James Van Hove selected the 1974 bin because of the two bins it would be easier to move because it did not include a drying system.

16. At the time of the dissolution of the partnership, there was grain in each bin, and there was a storage use commitment for the bins for 1982 and 1983.

17. Since 1983, James Van Hove has had no interest in corn stored in either bin.

18. Since the dissolution of the partnership, James Van Hove has made no effort to remove the 1974 bin. Merlin Van Hove had wanted to buy the bin from him and had agreed to rent the bin from James Van Hove for the two years prior to the filing of the bankruptcy case. James Van Hove, however, has received no rental payments from his brother. James Van Hove rented the bin to his brother because James had rented out his own farm, and therefore did not need the storage space.

19. At the time of the partnership dissolution, the partnership owed money to the Agricultural Stabilization and Crop Service on financing of each of the bins. The loan on the 1974 bin was paid in full using partnership funds after the dissolution of the partnership. At the time of trial, there was still money due and owing on the 1979 bin.

20. The partnership owned farm machinery and equipment. As part of the dissolution agreement, the machinery and equipment of the partnership was divided between the brothers.

21. It would cost approximately $1,200 to move the 1974 bin. The value of the 1974 bin is $6,000 to $7,000. A similar new bin would cost more than $9,000. The 1979 bin has a value of $12,000 to $13,000.

## DISCUSSION

The only issue before the Court is the respective rights of EQUITABLE and James Van Hove in the 1974 bin.

EQUITABLE argues that the 1974 bin is a fixture and therefore covered by its 1977 mortgage. James Van Hove argues that the bin is personalty and that he is entitled to it by virtue of the 1981 partnership dissolution agreement.

The parties believe that the dispute will be decided solely on the basis of whether the 1974 bin is a fixture or personalty. Therefore, in the main, the evidence at trial was directed at resolving that question. Would that it were that simple.

The Iowa Supreme Court, long ago, established a three-part criterion for identifying a "fixture". *The Ottumwa Woolen Co. v. Hawley,* 44 Iowa 57, 63 (1876).

The Supreme Court's analysis on many occasions since has examined whether: (1) there has been actual annexation to the realty or something appurtenant to the realty; (2) whether the object is applied to the use or purpose to which the related realty is also appropriated; and (3) whether it was the intention of the party making the annexation to make a permanent accession to the realty. *Cornell College v. Crain,* 211 Iowa 1343, 1345, 235 N.W. 731, 732 (1931).

However, the Supreme Court of Iowa has recognized that the first and second tests are alone unsatisfactory and that they are mainly important in aiding in the determination of intent. *The Ottumwa Woolen Mill Co.,* 44 Iowa at 63.

The intention of the party making the improvement is "the paramount consideration" in determining whether the item is a

fixture. *Cornell College*, 211 Iowa at 1345, 235 N.W. at 732.

Where an item is attached to the real estate only by its own weight, it is prima facie personalty and the party asserting that it is a fixture has the burden of proof. If the article is attached to the land other than by its own weight, even though slightly, the item is prima facie realty and the burden of proof is on the one contending that it is personalty. *Rahm v. Domayer*, 137 Iowa 18, 21, 114 N.W. 546, 547 (1908).

In this case, a cement slab was constructed. The bin was bolted to it. The Court finds that bin was affixed to the realty other than by its own weight. The Court concludes that the burden of proof is on James Van Hove to show that the bin is personalty.

The annexer of the bins to the real property was the partnership. It is, therefore, the partnership's intention that is relevant as to whether the 1974 bin is personalty or a fixture.

The Court finds from the evidence that the partnership was a tenant at will on the real property of the Debtors. The evidence shows that the partnership was in possession of a portion of the Merlin and Lalonie Van Hove farm for the business purposes of the partnership—the drying and storage of grain.

One in the possession of real estate with the assent of the owner is presumed to be a tenant at will until the contrary is shown. Iowa Code section 562.4.

A fixture may be a "trade fixture" if the reason for the annexation was to aid the tenant and making better use of the premises. As to a tenant, rules of removal are more lenient and in general, trade fixtures are removable by a tenant at the termination of the tenancy. *Speer v. Donald*, 201 Iowa 569, 572, 207 N.W. 581, 582 (1926); *Ray v. Young*, 160 Iowa 613, 617, 142 N.W. 393, 395–96 (1913).

If the tenant, however, intends permanent annexation to the property, then a fixture is not to be regarded as a trade fixture removable by the tenant at the end of the lease. *Winnike v. Heyman*, 185 Iowa 114, 118, 169 N.W. 631, 633 (1918).

■ This Court finds from the evidence that the 1974 bin was a trade fixture, not intended for permanent annexation to the property of Merlin Van Hove by the partnership, Van Hove Brothers.

The bin is removable without substantial destruction of its value or damage to the real estate. It was owned by the partnership, not Merlin Van Hove. It provided more corn storage capacity than Merlin's land warranted.

Therefore as to landlords Merlin Van Hove and Lalonie Van Hove, the 1974 bin was removable by the partnership tenant.

This does not end the analysis, however.

The bin was erected in 1974; EQUITABLE received its mortgage on the real property where the bin was located in 1977.

As between EQUITABLE and the partnership, the rule of law is different.

"As between vendor and vendee, it is the general rule that things personal in their nature, but fitted and prepared to be used with real estate, and essential to its beneficial enjoyment, being on the land, and especially if attached thereto in some permanent way at the time of its conveyance by deed, pass with the realty." *Bullard v. Hopkins*, 128 Iowa 703, 105 N.W. 197 (1905).

■ A vendee may acquire title superior to a third party with a prior, but unrecorded, interest in the same property, and that unrecorded interest may be that of a tenant of the vendor. *See Winnike*, 185 Iowa 114, 169 N.W. at 633.

Iowa law treats a mortgagee as a purchaser. *Raub v. General Income Sponsors of Iowa, Inc.*, 176 N.W.2d 216, 219 (1970).

To prevail, EQUITABLE must be more than a mere purchaser; it must be a bona fide purchaser. *Winnike*, 185 Iowa at 118–19, 169 N.W. at 632.

If EQUITABLE was a good faith purchaser for value without notice of the partnership ownership of the 1974 bin at the

time it took its mortgage, then the 1974 bin, despite the claim of its owner, is encumbered by EQUITABLE'S mortgage.

A subsequent purchaser to be entitled to protection of its mortgage must have paid value and must have been without notice of the prior unrecorded interest. *Walter v. Brown,* 115 Iowa 360, 88 N.W. 832 (Iowa 1902).

The burden of proof is two-fold. The burden of proof is on the subsequent purchaser to show that it paid value. This having been shown, the burden of proof is on the prior interest holder to show that the subsequent purchaser had either actual knowledge of its interest or had knowledge of facts which would have put an ordinary prudent man on inquiry that would have led to the discovery of the prior interest. *Walter,* 115 Iowa at 362–63, 88 N.W. at 832–33.

In the case at bar, it is admitted that EQUITABLE is the owner of a note secured by the mortgage and that its mortgage was perfected.

James Van Hove must bear the burden of showing that EQUITABLE at the time it took its mortgage in 1977 had notice of the partnership's interest in the bin.

This he did not do.

The Court therefore finds and concludes that EQUITABLE was a good faith purchaser without knowledge at the time of its mortgage of the outstanding interest in the bin of the Van Hove Brothers partnership.

The Court further concludes that the 1974 bin was an appurtenance to the land mortgaged to EQUITABLE and was included in EQUITABLE'S mortgage.

The Court, therefore, concludes that the right of EQUITABLE in the 1974 bin is superior to the right of James Van Hove arising out of the partnership dissolution.

The Court, however, desires to make clear that this Memorandum comes to no conclusions with regard to the 1979 bin. That bin was purchased and erected by the partnership on the property of Merlin and Lalonie Van Hove *after* the mortgage of EQUITABLE had attached. The parties' rights in that bin are not before the Court.

IT IS THEREFORE ORDERED that Judgment shall enter that the mortgage interest of Equitable Life Assurance Society of the United States in the 1974 Chief bin is superior to the ownership interest in that bin of James Van Hove.