**FIRST TRUST AND SAVINGS BANK OF MOVILLE, IOWA,**
Plaintiff–Appellee,

v.

**Bernice GUTHRIDGE,**
Defendant–Appellant,

**Farmers Home Administration, Defendant.**

No. 88–535.

Court of Appeals of Iowa.

June 15, 1989.

Donald H. Molstad of Shuminsky, Shuminsky & Molstad, Sioux City, for defendant-appellant.

**402**

Craig A. Raby and Arlene T. Curry of Crary, Huff, Clem, Raby & Inkster, P.C., Sioux City, for plaintiff-appellee.

Considered by OXBERGER, C.J., and DONIELSON and HABHAB, JJ., but decided en banc.

SACKETT, Judge.

In this replevin action we must determine whether there is substantial evidence to support the trial court's decision feed bunks on a farm now owned by defendant-appellant Bernice Guthridge are the property of plaintiff-appellee First Trust and Savings Bank of Moville, Iowa.

Bernice's son Larry Guthridge gave a security interest in the bunks to plaintiff in 1983 to secure a loan. At the time the security interest was given the bunks were located on the land. Bernice at that time had a life estate in the land and her son Larry owned the remainder interest. Larry was farming the land as Bernice's tenant and in 1985 conveyed by quit claim deed his interest in the farm to Bernice in satisfaction of two years of unpaid rents.

Defendant appeals the trial court order contending the bunks were fixtures and they were conveyed to her when her son gave her the quit claim deed. We disagree and affirm the trial court.

A replevin action is an enforcement of a plaintiff's right to immediate possession of property wrongfully taken or detained. *Iowa Truck Center, Inc. v. Davis*, 204 N.W.2d 630, 631 (Iowa 1973). Replevin is a law action, section 643.2, The Code (1987) and the findings of fact made by the trial court are binding on us if supported by substantial evidence. *Flickinger v. Mark IV Apartment, Ass'n*, 315 N.W.2d 794, 797 (Iowa 1982).

Defendant contends the bunks were fixtures. The Iowa Uniform Commercial Code provides

goods are "fixtures" when they become so related to particular real estate that

an interest in them arises under real estate law.

Iowa Code § 554.9313(1)(a) (1989).[1] However, a fixture continues to be characterized by Iowa realty law. McDonough, *Recent Statutory and Case Law Developments In Secured Transactions*, 27 Drake L.R. 41, 43 (1977–1978). *See also Ford v. Venard*, 340 N.W.2d 270, 271 (Iowa 1983) (court applied common law rule on issue of when personal property becomes a fixture). Under common law personal property becomes a fixture when

(1) it is actually annexed to the realty, or to something appurtenant thereto;

(2) it is put to the same use as the realty with which it is connected; and

(3) the party making the annexation intends to make a permanent accession to the freehold.

*Ford v. Venard*, 340 N.W.2d 270, 271 (Iowa 1983); *Cornell College v. Crain*, 211 Iowa 1343, 1345, 235 N.W. 731, 732 (1931); *Speer v. Donald*, 201 Iowa 569, 571, 207 N.W. 581, 582 (1926); *Rahm v. Domayer*, 137 Iowa 18, 20, 114 N.W. 546, 546 (1908); *Thomson v. Smith*, 111 Iowa 718, 721, 83 N.W. 789, 790 (1900); *Johnson v. Moser*, 82 Iowa 29, 30–31, 47 N.W. 996, 996 (1891); *Ottumwa Woolen Mill Company v. Hawley*, 44 Iowa 57, 62 (1876); *Teaff v. Hewitt*, 1 O. St. 511.

The intention of the party annexing the improvement is an important factor in assessing the issue. *See Ford*, 340 N.W.2d at 272. The character of the attachment is important in determining the intent. *Speer*, 201 Iowa at 571, 207 N.W. at 582. Because there was some attachment, the burden to show the bunks were not fixtures was on the bank. *See Rahm*, 137 Iowa at 20–21, 114 N.W. at 546.

At the time Larry gave the security interest he was a mere tenant on the land. We agree with the trial court his action in giving a security interest was evidence he intended the bunks to remain his personal property and not become attached to the property in which his mother held a life interest. We note also the fact the only attachment other than gravity was an easi-

1. Adopted 1974.

ly removable steel cable. Additionally, we look to the fact that when the bunks were brought on the farm Larry was but a tenant which would negate against their being determined fixtures. *Speer*, 201 Iowa at 572, 207 N.W. at 582. Also, they were intended to be used in the livestock business and the use of the bunks was limited by the requirements of the business rather than the boundaries of the farm. *Id.* There is substantial evidence to support the trial court's decision.

The plaintiff had filed a financing statement with the secretary of state covering Larry's personal property and the parties apparently agree the financing statement was in effect at all times material. Therefore, Bernice's interest would be subject to the bank's even if the bunks were sold or transferred to her.

Because of our holding, we need not address the issue of whether a quit claim deed would transfer a greater interest in the bunks than Larry owned.

AFFIRMED.

All Judges concur except
DONIELSON, J., who dissents.

DONIELSON, Judge (dissenting).

I respectfully dissent.

I would reverse the trial court's judgment issuing a writ of replevin in the Bank's favor for recovery of the forty fence-line feed bunks. I find no substantial evidence in the record Larry Guthridge intended the bunks to be personal property instead of fixtures.

I. *Fixtures.* The trial court determined the feed bunks were farm equipment and the Bank had properly perfected its interest by filing a financing statement in the office of the Secretary of State. Iowa Code § 554.9401 (1989). Appellant contends the feed bunks were fixtures and the Bank was required to perfect its interest by a fixture filing in the office of the County Recorder pursuant to Iowa Code section 554.9313 (1989). The issue here is whether the feed bunks were fixtures or personalty.

The majority correctly pointed out that under Iowa law, personal property becomes a fixture when:

(1) it is actually annexed to the realty, or to something appurtenant thereto;

(2) it is put to the same use as the realty with which it is connected; and

(3) the party making the annexation intends to make a permanent accession to the freehold.

*Ford v. Venard,* 340 N.W.2d 270, 271 (Iowa 1983); *Cornell College v. Crain,* 211 Iowa 1343, 1345, 235 N.W. 731, 732 (1931); *Speer v. Donald,* 201 Iowa 569, 571, 207 N.W. 581, 582 (1926); *Rahm v. Domayer,* 137 Iowa 18, 20, 114 N.W. 546, 546, (1908); *Thomson v. Smith,* 111 Iowa 718, 721, 83 N.W. 789, 790 (1900); *Johnson v. Moser,* 81 Iowa 29, 30–31, 47 N.W. 996, 996 (1891); *Ottumwa Woolen Mill Company v. Hawley,* 44 Iowa 57, 62 (1876); *Teaff v. Hewitt,* 1 O. St. 511. With the exception of *Ford v. Venard* in 1983, the appellate courts of this state have not considered this issue since 1931.

The intention of the party annexing the improvement is the "paramount factor" in determining whether the improvement is a fixture. *Ford,* 340 N.W.2d at 272. While the united application of the three factors determines whether an item is a fixture, "the character of the physical attachment, whether slight or otherwise, and the use, are mainly important in determining the intention of the party making the annexation." *Speer,* 201 Iowa at 571, 207 N.W. at 582; *State Security Bank v. Hoskins,* 130 Iowa 339, 342, 106 N.W. 764, 765 (1906). "This intention is not the secret purpose of the owner, but that which should be inferred" from the application of the other two factors. *Speer,* 201 Iowa at 571, 207 N.W. at 582.

The Iowa Supreme Court in *Rahm v. Domayer,* when considering the first factor as it relates to intention, pointed out the holding of its decisions has been

that physical attachment need be of no particular kind or degree, and that any annexation which, however slight it may be, indicates the intent, is sufficient to meet the demands of the rule ... the

true rule is that articles not otherwise attached to the realty than by their own weight are *prima facie* personalty, and articles affixed to the land in fact, although only slightly, are *prima facie* realty, and that the burden of proof is on the one contending that the former is realty or the latter is personalty.

*Rahm v. Domayer*, 137 Iowa at 20–21, 114 N.W. at 546.

The Iowa Supreme Court in *Ford* stated "physical attachment of the structure to the soil or to an appurtenance thereto is not essential to make the structure a part of the realty." *Ford*, 340 N.W.2d at 272, *citing Cornell College v. Crain*, 211 Iowa at 1345, 235 N.W. at 732. In *Ford*, the court held that a mobile home which had the hitch and wheels removed and was set on a concrete foundation, had become a fixture to the real estate. *Ford*, 340 N.W.2d at 272, *citing* cases which held buildings were fixtures. The mobile home had become so attached to the real estate that removal would be expensive and damaging. *Id.*

Iowa law does not require the attachment be so great as to cause damage upon removal of the fixture. The Iowa Supreme Court found in *Cornell College v. Crain* that a granary and a corncrib constructed on movable skids were intended to be fixtures. *Cornell College*, 211 Iowa at 1346, 235 N.W. at 732. Although these buildings were not attached to the realty, and, therefore, *prima facie* personalty, the court found the first factor was not controlling and the determinative factor was intent. *Id.* The *Cornell College* court emphasized the practical necessity for and the use to be made of the buildings on the premises. *Id.* The court found the buildings were essential to the proper conduct and operation of the farm and were well suited to the purposes for which they were erected. *Id.* Based on the second factor, the court found the appellee's obvious intention was to occupy and maintain the buildings upon the premises as permanent structures. *Id.*

Similarly, in *Rahm v. Domayer*, the Iowa Supreme Court relied on the use of the items and inferred an intent the items

become part of the realty. *Rahm*, 137 Iowa at 21, 114 N.W. at 547. Domayer owned an incomplete and unfinished building. He bought finishing lumber, doors, and transoms necessary for completing the building and placed the material in the building. *Id.* at 19, 114 N.W. 547. The court held that while the material was only annexed to the building by its own weight, he put the material there with the obvious intent to use it to complete the building. Therefore, the material was a fixture which passed with the conveyance. *Id.*

The Iowa Supreme Court ruled movable hog houses were not fixtures in *Speer v. Donald*, 201 Iowa at 573, 207 N.W. at 583. This case is similar to *Cornell College* in that the hog houses were placed upon runners (skids), were not attached to the land except by their own weight, and were designed to be moved from place to place. This case is distinguishable from *Cornell College* in that the nature of the use also evidenced an intent that the buildings not become fixtures. In *Speer*, the hog houses were used in connection with the business of raising hogs and cattle. *Id.* at 572, 207 N.W. at 581. However, the business was not confined to the farm in question. *Id.* The buildings had in fact been moved from farm to farm. *Id.* The court found that the fact the buildings were movable *and* the manner of their use in connection with other farms evidenced an intent not to make them a part of the realty.

The trial court in the present case found the fence-line feed bunks consisted of concrete bunks, each weighing 2,000 pounds. The forty bunks were installed by setting them on concrete blocks on the ground. The fence was secured by wooden fence posts at each end of the line of bunks. A steel cable runs through each bunk and attaches to the wooden posts at each end. The trial court determined the feed bunks were movable by their nature and were only attached by their own weight and therefore concluded they were not fixtures. The court also concluded Larry Guthridge intended the bunks be personal property by virtue of the fact the parties entered into a

security agreement and not a second mortgage to finance the acquisition.

The trial court concluded the bunks were fixtures based on the fact that (1) they are movable by nature and attached only by their own weight; (2) the property's use as a fence is only incidental to its primary use as a feed bunk; and (3) the parties treated them as personal property by virtue of the fact that they entered into a security agreement and not a second mortgage. I find the trial court's conclusion that the bunks were intended to be personalty was based on a misapplication of the law.

The trial court determined that under the first factor the bunks were movable and therefore not fixtures. First, the bunks, although movable, were affixed to the land by a cable and posts. Although the attachment is slight, under *Rahm v. Domayer*, the bunks are *prima facie* realty and the burden of proof is on the bank to show they were intended to be personalty. Second, under *Ford*, physical attachment is not essential to make the bunks a part of the realty. Therefore, the law doesn't allow for the inference the bunks were personalty based merely on the fact they are movable.

In evaluating the use of the bunks, the court concluded the bunks were no more a part of the fence than a building placed in a fence line would be a fence. The court's conclusion that the use of the bunks as a fence is only incidental to their use as bunks fails to take into account the fact that the bunks were specifically made and purchased for the purpose of making them a part of the fence. I find the nature of the use of the bunks evidences an intent that they become part of the real estate. The bunks were used as a fence to contain cattle and an apparatus for feeding them. The bunks were well suited for use as a fence and were used in connection with the business of raising cattle. Unlike *Speer*, the use of the bunks in this case was confined to one farm. There is no evidence in the record that the bunks in question were ever moved. The trial court seems to rely on the fact that it is not uncommon for farmers to move the bunks in finding that under the second factor the bunks were not intended to be used as fixtures. The paramount factor here is the intent of Larry Guthridge, not other farmers owning such bunks.

The trial court found Larry Guthridge intended the bunks to be personalty because he entered into a security agreement rather than a second mortgage to finance the bunks. No such intent may be inferred because the U.C.C. provides for the perfection of a security agreement involving fixtures. Iowa Code § 554.9313 (1987).

The majority determined the trial court's finding that the bunks were intended to be personalty was supported by substantial evidence. The majority relies on the fact Larry Guthridge was "a mere tenant on the land" at the time he gave the bank a security interest in the bunks. The majority concludes, citing *Speer*, 201 Iowa at 572, 207 N.W. at 582, that this evidences his intention the bunks remain his personal property and not become fixtures.

First I point out that the landlord-tenant relationship was but one factor in *Speer*. That court relied more heavily on the fact that the movable hog houses and feed bunks were not attached to the land, save by their own weight, and were in fact moved from farm to farm. *Id.* Second, Larry Guthridge was not a "mere tenant" when he gave the bank a security interest in the bunks. Larry had a remainder interest in the land upon which the bunks were placed and was renting from the life tenant, his mother. I find no intent the bunks be personalty can be inferred from the fact that Larry was a tenant at the time he placed the bunks on the land under these circumstances. Further, the majority also relies on the fact the bunks were intended to be used in the livestock business, and the bunks were limited by the requirements of the business rather than the boundaries of the farm. The court in *Speer* found such was the case "as his operations in the prosecution of that business seem not to have been confined to the farm in question." In the present case, the use of the bunks was limited to one farm. There is no evidence that even if Larry moved the

bunks, they would be moved for use off the farm. I do not find any evidence that Larry's intent, based on the use of the bunks, was that the bunks be personalty.

The majority seems to be inferring that since the bunks were movable, Larry intended them to be personalty. That inference is not supported by the law. The extent of the attachment is but one factor in determining Larry's intent. *Speer*, 201 Iowa at 571, 207 N.W. at 582. However, the mere fact that the bunks were movable does not require a finding they were intended to be personalty. Instead, the issue with regard to movable buildings and feeders is whether the owner intended they become a permanent part of the premises. *Cornell College*, 211 Iowa 1346–47, 235 N.W. 731, 732. In *Cornell College*, the Iowa Supreme Court determined that although a hog house and farrowing pens could be moved about on the premises, the owner's intent was clearly that they be used only on the premises and become a permanent part of the premises. *Id.* That case is analogous to the present situation. Larry used the bunks on the farm in the livestock business. Although the bunks were movable, there is no evidence he intended to use the bunks off the premises. Instead, the evidence shows that even if Larry were to move the bunks (there is no evidence they were ever moved), he would have moved them for use elsewhere on the premises. This case is not like *Speer*, where the livestock operation was not limited to one farm. Accordingly, the majority's emphasis on *Speer* is misplaced.

I find no substantial evidence in the record, based on the manner of attachment and the use of the bunks on the Guthridge farm, that Larry Guthridge did not intend the bunks to be permanent fixtures. The Bank did not sustain its burden of proof and the trial court erred in holding the bunks were not fixtures.

II. *Perfection of a Security Interest in Fence–Line Feed Bunks.* The trial court held the Bank had properly perfected its security interest in the feed bunks by filing a financing statement with the Iowa Secretary of State. Appellant contends the trial court erred in granting the Bank a writ of replevin because the Bank did not file with the County Recorder. Therefore, she argues, the conveyance from Larry Guthridge to her defeated the Bank' claim to the feed bunks.

Fixtures pass with the realty upon conveyance absent notice of a lien. *See Winnike v. Heyman,* 185 Iowa 114, 118, 169 N.W. 631, 633 (1918); *Bullard v. Hopkins,* 128 Iowa 703, 705, 105 N.W. 197, 197 (1905). Notice of a security interest in these fixtures is governed by the Iowa Uniform Commercial Code.

The U.C.C. requires a "fixture filing," a filing in the office where a mortgage on the real estate would be recorded, to perfect a security interest in fixtures. Iowa Code § 554.9313(1)(b) (1989). Real estate records are filed in the office of the county recorder. The Bank did not file a fixture filing and therefore did not perfect its security interest in the feed bunks.

The purpose of perfection under the U.C.C. is to give purchasers notice. When a filing is made in an improper place but the buyer nonetheless has actual notice of the security interest, the buyer takes subject to the security interest. Here, there is no evidence in the record that Bernice Guthridge knew the Bank had a security interest in the feed bunks. Therefore, under the conveyance of the real estate, she takes the feed bunks free of the Bank's security interest.

I would rule the trial court erred in granting the Bank a writ of replevin.