# IN THE COURT OF APPEALS OF IOWA

No. 15-2165
Filed November 9, 2016

**LEAH N. HINDERKS, Individually and as Administrator of the Estate of Larry H. Hinderks, deceased, and CORE BUSINESS LEASING LLC, RUSSELL NADEN f/d/b/a NADEN INDUSTRIES, and CUSTOM APPLICATIONS AG, LLC,**
        Plaintiffs-Appellees,

**vs.**

**LUELLA E. HINDERKS and WADE HINDERKS,**
        Defendants-Appellants.
_____

        Appeal from the Iowa District Court for Hamilton County, James A. McGlynn, Judge.

        The defendants in an action for replevin appeal from the district court's ruling. **AFFIRMED.**

        Darren Robinson and Adam R. Triplett of McEnroe, Gotsdiner, Brewer, Steinbach & Rothman, P.C., West Des Moines, for appellants.

        Joseline L. Greenley, Webster City, for appellees.

        Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

Luella and Wade Hinderks, defendants in an action for replevin, appeal from the district court's ruling in favor of the plaintiffs.

**I. Background Facts and Proceedings.**

The decedent, Larry, and his father, Dennis, farmed together at the family homestead for a number of years. During those years, each bought machinery and tools and often kept them in buildings on the family property.

When Dennis died in 2001, he was survived by his wife, Luella. Luella would have inherited all of Dennis's land and possessions, but she executed a disclaimer "of all my interest in the farm equipment described in Exhibit A," which had the effect of allowing the equipment to pass to Larry. Luella filed a second disclaimer for one-half interest in the family farmland, which also then passed to Larry.

Larry died intestate in September 2014. At the time, he was survived by his third wife, Leah, and his sons from previous marriages, Wade and Jay. Wade Hinderks is a named defendant in this action.

Leah was named the administrator of Larry's estate. As such, she took steps to collect his property, and she contacted a local auctioneer to arrange for a sale to take place on the family farm. The auction was set to take place on February 28, 2015. In the days leading up to it, Luella put up "No Trespass" signs around the farm, put a chain across the driveway entrance, and sent out notices that she was denying entry to the farmstead. Luella and Wade told Leah they were disputing ownership over some of the items listed for sale. The

auction had to be postponed, with the items eventually transported to a different site for sale.

In March, the plaintiffs filed this action for replevin. The action claimed more than 230 items that the defendants were preventing the plaintiffs from recovering from the farmstead.

Leading up to the trial, the parties were able to reach agreements on more than 130 of the items in dispute, and two stipulations were filed with the court.

The trial took place on September 30 and October 1, 2015. In its written ruling, the court found almost completely in favor of the plaintiffs, ordering all but three items returned to the plaintiffs. Additionally, the court awarded the plaintiffs damages: $748.10 in lost advertising expenses for the cancellation of the first auction; $22,824.89 in reduced proceeds due to the fall in the market between the planned sale and the actual sale; $2,000 in expenses for the removal and storage of property; and "such further expenses and losses which will be suffered by the estate in selling the remaining assets which would have been sold on February 28."

The defendants appeal.

## II. Standard of Review.

Replevin is an action at law. *First Trust & Sav. Bank v. Guthridge*, 445 N.W.2d 401, 402 (Iowa Ct. App. 1989). We review for correction of errors at law. *Ankeny Cmty. Sch. Dist. v. Van Gorp*, 501 N.W.2d 506, 507 (Iowa 1993).

## III. Discussion.

The defendants maintain the district court made several errors in its ruling. They maintain the court wrongly determined Luella's disclaimer was all-

encompassing and wrongly included certain items affixed to the property as "trade fixtures" removable by Larry. Additionally, they maintain the court's determination the estate had the right to hold the February 28 auction on the farmstead and the award of the corresponding damages—for having to move the site of the auction and transport the equipment and tools—was in error.

**1. Replevin Generally.**

"Replevin is an action to recover specific personal property that has been wrongfully taken or wrongfully detained, with an incidental right to damages caused by reason of such detention." *Flickinger v. Mark IV Apartments, Ass'n*, 315 N.W.2d 794, 796 (Iowa 1982). "A wrongful taking need not be by forcible dispossession; any unlawful interference with, or assertion of control over, the property is sufficient." *Id.* "A wrongful detention occurs when the defendant wrongfully withholds or retains the possession of the property sought to be recovered." *Id.* "Once there has been a wrongful taking or detention, possession does not become rightful until some form of redelivery occurs. Wrongful possession of property does not become rightful merely by agreeing to allow recovery by the party entitled to possession." *Id.* at 797.

If the plaintiffs satisfy the burden of proving a wrongful taking of property, the burden then shifts to the defendants to show they no longer have possession. *See id.* If the defendants are unable to do so, it is presumed that possession continued. *Id.* The court may also award damages, as follows:

> (1) The injured party may demand the return of [their] property plus damages for its wrongful detention.
> (2) [They] may seek judgment for the money value of the property, treating the conversion as complete either at the time it was taken or at the time of trial.

(3) If the former, [they] may have interest on the value as determined by the trier of fact from the date of the seizure until the date of judgment and nothing more. The judgment itself, of course, bears interest thereafter.

(4) If [they] elect[ ] under (2) above to rely on a conversion as of the time of trial, [they] may have the money value of the property as of that date, plus damages for loss of use from the time it was seized until the time of trial.

*Id.* (citation omitted).

**2. Disclaimer.**

Here, the district court determined Larry's estate was entitled to possess everything in the shops on the farmstead. The court found Luella had intended to disclaim all of the farm-related personal property owned by Dennis and any other unaccounted-for property was either already owned by Larry at the time of Dennis's death or purchased by Larry afterward.

The defendants claim this finding is in error, but we agree with the district court. The list of farm equipment and tools in the probate inventory was the exact same list Luella used in the disclaimer that she filed. Before Dennis's death, Luella and Dennis consistently filed depreciation schedules, which included farm equipment and tools. After Dennis died and Luella filed the disclaimer, her depreciation schedules no longer appeared to contain any items that would be used for the farming operation. Instead, Larry claimed the items and the depreciation.

Luella claimed at trial, and she argues again on appeal, that the probate inventory was not a complete list. But as the district court noted, the probate inventory was certified as a complete list—under the penalty of perjury—at the time it was filed. And Luella never suggested that the list was anything other

than complete before this litigation began. Some of the items she argued were accidentally left off the probate list but purposely left off the disclaimer were large items—such as tractors—that have been on the property since the time of her husband's death. We believe this belies her testimony that the items were accidentally left off the probate inventory. Furthermore, in the years since his father's death, Larry appears to have sold and traded items at will—even items that were not explicitly listed in the disclaimer. As the district court summarized, "For 14 years, neither defendant questioned Larry's right to possess, use, control, or even sell any of the items on the farmstead."

We agree with the district court that the disclaimer filed by Luella was meant to be all-encompassing in regards to the machinery and tools necessary to farm. As such, Larry's estate had the right to possess those items.

**3. Trade Fixtures.**

"'Trade fixtures' is a term usually employed to describe the property which a tenant has placed on rented real estate to advance the business for which it is leased and which may, as against the lessor, be removed at the end of the tenant's term." *Winnike v. Heyman*, 169 N.W. 631, 632 (Iowa 1918). To determine if something is a trade fixture, we consider "the intention of defendant in putting them in, the manner of their attachment to the building, and the manner and the purpose of their use in connection therewith." *Id.* at 633. The question of intent is one for the factfinder. *See id.* ("The issue[ ] as to intent . . . should have been submitted to the jury.").

Here, the district court held that each of the items[1] claimed by the defendants as fixtures are trade fixtures, which the tenant—now Larry's estate—had the right to remove. The defendants maintain this ruling is in error because (1) it is not clear Larry was the person to bring and attach the items on to the realty, and (2) Larry was unable to testify about his intent regarding the items.

Most of the items listed by the defendants can be traced back to Larry's purchase through the depreciation schedules entered into evidence by the plaintiffs. Both the parts washer and the tire machine are listed on Larry's 1999 depreciation schedule—before he received anything from Dennis's estate—and it lists those items as going into service in June and August of 1980. The same is true for one of the air compressors—put into service in July 1993—and the Westfield auger—put into service in December 1996. The other two air compressors are listed on Core Business Leasing LLC's depreciation schedule and were purchased for the business in 2010. Last, the grain dryer can be found on Larry's 2001 depreciation schedule, and the dryer is listed under "machinery and equipment" as going into use in January 2000.

For these items that we have clear evidence that Larry purchased, we cannot say the district court erred in finding that Larry intended them to be attached to the realty only insofar as he used the buildings for his business purposes. *See In re Van Hove*, 84 B.R. 567, 570 (Bankr. N.D. Iowa 1988) ("A fixture may be a 'trade fixture' if the reason for the annexation was to aid the

---

[1] Specifically, the defendants maintain the parts washer, Westfield auger, MC Grain Dryer, the DMC Push pack, the unloading auger, three air compressors, and the tire machine are fixtures. They also claim a storage container is a fixture, but we note that storage container was included in the second stipulation as property belonging to Larry's estate.

tenant and making better use of the premises.  As to a tenant, rules of removal are more lenient and in general, trade fixtures are removable by a tenant at the termination of the tenancy." (citing *Speer v. Donald*, 207 N.W. 581, 582 (Iowa 1926); *Ray v. Young*, 142 N.W. 393, 395–96 (Iowa 1913))).  Larry's estate had the right to remove these items from the premises as trade fixtures.  *See, e.g.*, *Leslie Pontiac, Inc. v. Novak*, 202 N.W.2d 114, 117 (Iowa 1972) (finding the tenant had the right to remove a steel building that it placed on the premises); *Marty v. Champlin Ref. Co.*, 36 N.W.2d 360, 364 (Iowa 1949) (finding an automobile lift, air compressors, tanks, and signs were trade fixtures of the filling station that could be removed by the tenant).

That leaves only item #60, the DMC push pack, and item #74, the unloading auger.  We note the unloading auger was received by Larry as part of the disclaimer, but we cannot find the DMC push pack on any of the depreciation schedules in the record before us.  According to testimony, both items are connected to the grain dryer.  Because we have already categorized the grain dryer itself as a removal trade fixture, the push pack and the unloading auger cannot be said to be attached to the realty of the defendants.  Thus, we do not believe either of the two items falls within the definition of fixtures.  *See Cornell Coll. v. Crain*, 235 N.W. 731, 732 (Iowa 1931) (stating that of the "three requisites" is the "actual annexation to the realty or something appurtenant thereto" and the "method of attachment to the soil is of significance").  That being said, we do not find the district court erred in its determination that Larry's estate could remove the items.  We believe the items either passed to Larry through the

disclaimer, as the unloading auger appears to have done, or were already the property of Larry at the time of Dennis' death.

### 4. Right of Entry.

Next we consider whether Larry's estate had the right to enter and hold the auction on the farmstead. The district court considered Larry's rights under a farm tenancy and determined that, because a termination notice had not been given to Larry by September 1, 2014, his successor still had the right to use the land and the buildings in February 2015. *See* Iowa Code § 562.7 (2015) (requiring that written notice be provided upon either party by September 1 in order to terminate lease); *see also* Iowa Code § 562.5 (requiring farm tenancies to terminate on the first day of March). The defendants maintain the statutory requirements for farm tenancies apply only to the land used for crops and the district court's inclusion of the buildings and shops on the farmstead was an improper expansion of the statute.

Even if the buildings were not included in the farm tenancy, Larry was at least a tenant at will.[2] Larry had used the building for the farming operations and his other businesses both during his father's lifetime and in the fourteen years after his death, and Luella clearly consented to such action. There was testimony that Larry had entered into a verbal cash rent lease with Luella. *See* Iowa Code § 562.4 ("A person in possession of real estate, with the assent of the

---

[2] We note that in its ruling, the district court stated, "Luella disclaimed Dennis's undivided one-half interest in the family farm to Larry." We do not have this second disclaimer in the record before us, so we cannot confirm whether the disclaimer included only tillable acreage or the entire farmstead. If Larry owned an undivided one-half interest in the property, including the shops and outbuildings, his estate would clearly have had the right to enter the property.

owner, is presumed to be a tenant at will until the contrary is shown . . . ."). Moreover, neither Luella nor Wade presented any evidence that notice of termination was ever given. *Id.* ("[T]hirty days' notice in writing must be served upon either party or a successor of the party before termination of the tenancy.").

Because Larry's tenancy had not terminated, his estate had the right to enter the property and use it for the auction.

**5. Damages.**

Last, the defendants maintain the district court erred in determining the amount of damages. They argue the court incorrectly relied on the figures provided by someone not properly designated as expert. Additionally, they assert that the court's award of "such further expenses and losses which will be suffered by the estate in selling the remaining assets which would have been sold on February 28" was improper.

*A. Expert.* The defendants maintain the plaintiffs failed to disclose their expert witness, Jason Hallberg, and that their failure precludes the court's reliance on his testimony to determine damages. The plaintiffs respond that they substantially complied with the requirements of Iowa Rule of Civil Procedure 1.500(2), so the court's reliance was proper.

Both parties listed Hallberg on their initial disclosures of witnesses. The plaintiffs' disclosure stated that Hallberg was expected to testify about the "description and location of property; valuation; valuation for damages." The plaintiffs listed their "computation of each category of monetary damages" and included both the advertising costs and estimate of reduced sale proceeds with the note "documentation from Jason Hallberg." Additionally, in the plaintiffs'

answers to the defendants' interrogatories, they were asked to state any and all facts upon which they based their valuations of items listed in the replevin action and their claim the sale proceeds were reduced. For each, the plaintiffs answered they were basing their claims on the input of Hallberg, who had years of experience selling similar equipment at auction.

"We hold a liberal view on the admissibility of expert testimony in this state." *Quad City Bank & Trust v. Jim Kircher & Assocs., P.C.*, 804 N.W.2d 83, 92 (Iowa 2011). *See also Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 774 (Iowa 2006) ("This court has long been 'committed to a liberal rule [that] allows opinion testimony if it is of a nature which will aid the jury and is based on special training, experience, or knowledge [as] to the issue in question.'" (alterations in original) (citation omitted)). Considering the broad discretion given to district courts in determining whether to admit expert testimony, here we do not believe the district court abused its discretion by allowing the witness to testify and considering his testimony in reaching its decision. *See Klein v. Chicago Cent. & Pacific R.R. Co.*, 596 N.W.2d 58, 60 (Iowa 1999) ("We accord the trial court broad discretion in the admissibility of expert testimony. We interfere only if clear abuse is shown." (citation omitted)).

**B. Indefinite Damages.** The district court ordered that, after the plaintiffs sold the items returned following the replevin action, "the estate shall file its proof of the amounts received" and that "total shall be divided by .91 to arrive at the likely amount which would have been received had the sale occurred on February 28, 2015." The court awarded the difference between the two as the amount of lost sale proceeds suffered by the estate.

The defendants maintain the court's action is improper. They rely, in part, on the argument that "given the right market conditions, it is possible that the property could be sold for more than it was valued on the date the petition was filed." While the defendants' assertion may be true, it has no bearing on the issue at hand. In an action for replevin, the district court has the power to award damages that exceed the value of the property that was detained. *See Universal C.I.T. Credit Corp. v. Jones*, 227 N.W.2d 473, 479 (Iowa 1975). Additionally, we see no error in waiting for more information to determine the proper amount of damages. *See Barry v. State Sur. Co.*, 154 N.W.2d 97, 101 (Iowa 1967) ("What we have said indicates that all damages which were known or ascertainable at the time the replevin action was tried must be included in that judgment. It does not follow that a separate action for damages may never be maintained. There are instances in which a litigant cannot determine his damages until after the replevin action.").

For the foregoing reasons, we affirm the district court's ruling and judgment in favor of the plaintiffs.

**AFFIRMED.**